THE PEOPLE *ex rel.* BOSQUI *v.* CROCKETT *et al.*

A railroad company cannot refuse to enter the transfer of stock in said company, on their books, on the ground that the assignor of the stock is indebted to the company, unless the company had a lien upon the stock, at the date of its transfer.

A by-law, passed two days after such transfer, to the effect that no transfer of stock should made upon the books of the company, until all indebtedness of the assignor was paid, would not give the company such lien, or a right to refuse to enter the transfer on their books.

The company had a right to pass such by-law, to operate prospectively. *Quære*, would such by-law affect subsequent purchasers *without notice?*

APPEAL from the District Court of the Twelfth Judicial District, City and County of San Francisco.

The facts of this case appear in the opinion of the Court.

*Crockett & Page* for Appellants.

The only question is, whether the by-law of the company had such a prospective effect as to be operative against assignments of stock already made, by an endorsement on the certificate?

For a full and satisfactory exposition of the law on this subject, and a collection of authorities, we refer to Angell & Ames on Corp., §§ 353–357.

But it is not the general law only, by which the question is to be decided, as our statutes and decisions have much to do with it, and, in our opinion, are conclusive on the point.   See Railroad Law, § 20, Session Acts, 1854, p. 173.

The company were not affected by the assignment to plaintiff. The transfer of the stock was not good, or complete, except as between the parties, until the entry on the books of the company.   The assignment was a nullity, so far as they were concerned.   They had the same right to deal with Palmer's stock, as if he had not assigned it.   Weston v. Bear River and Auburn Water and Mining Company, 5 Cal., 186.

It was the duty of Bosqui, before taking the stock, to ascertain if the company had any lien upon it, and, not having done so, he cannot complain.

*Shafter, Park & Shafter*, for Respondents.

The corporation had no power to pass the by-law in question, for the reason that all the conditions of an operative transfer are prescribed in the charter itself.

The cases in which it has been held that there could be no transfer, until the debts of the assignor to the company had been paid, have gone on the grounds: first, that there was a provision to that effect in the charter itself; second, on the ground of a by-law to that effect, the charter turning the entire subject of transfer over to the corporation, to be regulated by it.

In the charter of the Sacramento Valley Railroad Company, neither one of the predicaments is true.   The mode and rule of transfer are prescribed in the charter, and nothing is left for the corporation to do.   Acts of 1854, p. 84, § 20.

It has been suggested that the provision in section twenty, that transfers shall not be valid, except between the parties thereto, until the same shall have been entered on the books of the stockholders, "carries with it a power to the corporation, to subject the right of transfer to restrictions cumulative to those named in the charter."

The answer is, that the words quoted are not words of grant. This section does not profess to treat of corporate powers, or the powers of the directors.   That subject is taken up and exhausted, in section fourteen.

Section twenty provides, in effect, that shares may be transferred before the instalments on them have been paid.   The by-law says they shall not be.

"May" has the force of "shall," whenever the rights of the public, or third persons, are concerned.   Newburgh T. Co. v. Miller, 5 John. Ch. R., 112.

The clause of section twenty contemplates merely a system of registration, so the officers of the corporation may know who are entitled to vote, and who are entitled to dividends, and for the benefit of the creditors of individual stockholders, as was held in Weston v. The Bear River Co., April T., 1855.

The power to make by-laws, contained in the fourteenth section, is so limited by that section, that a by-law opposed to the charter would be void.

It appears that the stock was transferred to Bosqui on the twenty-eighth day of January, 1857, and that the by-law in question was not passed until the thirtieth day of that month.

Retrospective and *ex post facto* by-laws are void at common law.    Angell & Ames, 3 ed., p. 335; 1 Keble, 733; Howard v. Scannell, Charl., (Ga.,) 173.

BURNETT, J., delivered the opinion of the Court—TERRY, C. J., concurring.

*Mandamus*, to compel defendant Crockett, as president, and Payson, as secretary, of the Sacramento Valley Railroad Company, to transfer to the relator, on the books of the company, one hundred and twenty-seven shares of stock.

On the twenty-eighth day of January, 1857, W. A. Palmer was the owner of the shares, and on that day transferred them to the relator, for a valuable consideration.    Previous to the assignment, Palmer had executed to the company his note, for five thousand five hundred and seventy-three dollars and eighty-one cents, which was still unpaid.    On the thirtieth day of January, 1857, the board of directors passed a by-law, to the effect that no transfer of stock would be made upon the books of the company, until all indebtedness of the assignor had been liquidated.    On the sixth day of February, 1857, the relator requested a transfer to be made to him, which was refused by the company, except upon condition that the relator would pay the note of Palmer.    The District Court ordered a peremptory mandate, and the defendant appealed to this Court.

The twentieth section of the amendatory act of 1854, page eighty-four, provides that transfers of stock may be made by endorsement and delivery of the certificates, signed by the proprietor; "but such transfer shall not be valid, except as between the parties thereto, until the same shall have been entered in the book of stockholders."

The only question in the case, arising under this provision, and the former adjudications of this Court, is, whether the company had any interest in, or lien upon, the stock, at the time the tranfer was made.    The transfer is only invalid as against a third party, who has some legal and valid existing claim upon the property.    If the company had no such interest, then the transfer was good as between the parties, and, being good as be-

tween them, the company could not rightfully object to the demanded transfer.

The company had no lien by express agreement, or by its charter; and no lien could exist at common law. (Angell & A. on Cor., § 355.) How, then, did the company acquire the alleged lien? The by-law was passed two days after the transfer. Could it have a retrospective operation? We think not.

Under the provisions of the fourteenth section, the board had the right to pass such a by-law, to operate prospectively. But whether such a by-law would affect even future purchasers of stock, without notice, is a question not arising in this case. When the charter itself does not give the corporation this lien, and when the purchaser has no notice of the by-law, it has been much doubted whether the lien of the company can be sustained. (6 Pick., 329; 1 Harrington's Del. Rep., 27; 8 Ser. & R., 73.) In the case of Tuttle v. Walton, (1 Kelly's Ga. Rep., 43,) where the liability of the stockholder was stated in the certificate, and was created by an express by-law, the lien of the company, for debts due to it, was sustained against a subsequent purchaser having notice.

Our conclusion is, that the company, at the date of the transfer, had no vested interest in the stock; and that the by-law, passed afterwards, could have no retrospective operation. The right of the relator to the transfer had, therefore, attached before the passage of the by-law, and could in no way be affected by it.

Judgment affirmed.