[Civ. No. 5431.   Third Appellate District.—November 5, 1935.]

MAGNOLIA PARK NATIONAL BANK OF BURBANK, CALIFORNIA (a National Banking Association), Appellant, v. BANKS, HUNTLEY & COMPANY (a Corporation), Respondent.

M. G. Luddy and Patrick F. Kirby for Appellant.

M. M. Holman, Young, Lillick, Olson & Kelley and E. L. Searle for Respondent.

PLUMMER, J.—The plaintiff brought this action to recover secret profits alleged to have been withheld by the defendant from the plaintiff on account of the sale of certain bonds owned by the plaintiff and delivered to the defendant for the purposes of sale. The defendant had judgment, and from this judgment the plaintiff appeals.

The record shows that on or about the tenth day of February, 1932, the plaintiff bank was in process of voluntary liquidation. Among its assets were four groups of bonds which it had deposited with the respective treasuries of the city of Los Angeles, the county of Los Angeles, the city of Burbank, and the state of California. Banks, Huntley & Company, a corporation, was and is engaged in business as a stock and bond broker, with its principal place of business in Los Angeles. The defendant was financially interested in the plaintiff bank, in that it was interested in the Pacific Properties Corporation, and this last corporation was one of the stockholders of the plaintiff bank.

Some time prior to February 11, 1932, F. H. Schenk, the cashier of the plaintiff bank, and V. P. Lester, representing the defendant corporation, had two conferences. One of these conversations turned on the matter of the bonds to which we have referred, and which were placed as security for deposits. Lester recommended that the bonds be sold and the deposits paid off. Schenk agreed to this, provided it be ratified by the board of directors of the plaintiff, and told Lester that he could not act without the approval of the board. Lester then asked him to take the matter up with the board and secure its consent, and at a meeting of the board held thereafter, the board of directors passed a resolution instructing the cashier to close out the deposit of public moneys, and to sell all the bonds pledged to secure these deposits. The sale was to be made through the defendant company at the prevailing market price, but in no case at a price to exceed one per cent less than the prices shown in

a schedule attached to the resolution. The resolution further stated that any sale of bonds not in conformity with the resolution must be approved by the board of directors. The defendant accepted the employment and agreed to handle the sale of the bonds without compensation. This agreement to act without compensation appears to have been based upon what we have heretofore stated as the interest of the defendant in stock in the plaintiff bank. The record shows, however, that the defendant company, after performing the services referred to in the disposing of the bonds emerged with a profit of $3,431.53.

The record further shows that the defendant not only made the profit which we have just stated, after having agreed to handle the sale of the bonds without compensation, but kept the fact of this profit from the knowledge of the plaintiff. The defendant reported its sale of the bonds, and paid to the plaintiff the sum of $262,923.19. The bonds actually brought the sum of $266,582.21. From this sum the plaintiff admits that there should be deducted the sum of $227.49 as a legitimate expense account.

Preceding the sale of the bonds the following communication was addressed to Banks, Huntley & Company by the cashier of the plaintiff:

"February 26, 1932.

"Banks, Huntley & Company,
    "634 South Spring Street,
        "Los Angeles, California.
"Gentlemen:

"Under date of February 11, 1932, we authorized you to sell certain bonds as outlined in our letter, which sale you have now completed.

"So that the records of this bank might be complete, and to assist the directors in ratifying the sale of bonds made for our account, the directors have requested that I write asking that you direct a letter to their attention in care of this bank, stating that the sale of bonds was made in conformance with our letter of February 11, 1932. Your assistance in this matter will be appreciated.

"Very truly yours,
    "Floyd H. Schenk, Cashier."

On the twelfth day of April, 1932, the defendant wrote to the plaintiff as follows (reporting the disposal of the bonds):

"Banks, Huntley & Co.
"Investment Securities.
"Los Angeles.
"March 31, 1932.

"Magnolia Park National Bank,
"Burbank, California.

"Att: Mr. F. L. Schenk, Cashier:

"Gentlemen:

"This will acknowledge receipt of your letter of February 26 with reference to sale of bonds for your account in accordance with instructions contained in your letter of February 11.

"All of these bonds were sold at the prevailing market price and in all but one instance this price equals or exceeds the minimum price mentioned in your letter of February 11th.

"The one exception was the sale of $15,000.00 Los Angeles Electric plant 4/s of 1934 and 1958 which in accordance with telephone communication at the time was due to the fact that the maturities of this lot of bonds were incorrectly stated to us originally, so that the price mentioned in your letter of February 11th was based on our original quotation and was therefore incorrect.

"Very truly yours,
"BANKS, HUNTLEY & COMPANY,
"By N. L. WRIGHT."

The defendant at the trial offered testimony to establish novation to prove that the original contract had been changed. The testimony introduced in that behalf, however, does not establish any such contention. It appears conclusively upon the record that even though the defendant, under a later agreement, bought a portion of the bonds itself, it was to purchase the bonds at the prevailing market price, which the record shows that it did not do. We quote here the testimony of the witness Lester, who was acting for the defendant in relation to the purchase of the bonds by the defendant, as follows:

"The original arrangements which we made with Mr. Schenk on or about February 10th or 11th, after the delivery of plaintiff's exhibit 2, was changed as the result of the telephone conversation I had with Mr. Schenk. In that conver-

sation Mr. Schenk agreed that Banks, Huntley & Company might buy these bonds themselves at the prevailing market price, provided that price exceeded the minimum at that time. That is, that Banks, Huntley & Company were to buy the bonds and pay the plaintiff the prevailing market price. At the time of this conversation, which was on February 17th, at least $120,000.00 of the bonds had already been sold by Banks, Huntley & Company. We had commitments for that amount and had committed ourselves. We had not received the money for the bonds. I said nothing to Mr. Schenk as to what we would pay Magnolia Park National Bank for the bonds we had already sold.''

This testimony conclusively shows that not only had $120,000 worth of bonds been already sold, though not yet delivered, but that whatever bonds the defendant was to purchase should be purchased and paid for at the prevailing market price. The court in its finding set forth the defendant was not entitled to any commission for its services. It did find, however, that the plaintiff had ratified the acts of the defendant, and therefore that judgment went in favor of the defendant.

While the briefs of counsel contain page after page of argument as to the authority of Schenk as cashier of the plaintiff bank to agree to a novation or change in the original agreement, we do not find it necessary to enter into any consideration or discussion in this opinion of that question, as the testimony in the case which we have set forth, and which is also supported by the witness Wright, an officer of the defendant, is to the effect that the bonds were to be sold at the prevailing market price. In fact, Mr. Wright testified that he wrote the appellant as follows: ''All these bonds were sold at the prevailing market price, and in all but one instance this price equals or exceeds the minimum price mentioned in your letter of February 11th.'' This witness also stated that he meant that the price remitted to the appellant was the prevailing market price at the time of the transaction.

While contended for by the respondent, there is absolutely no testimony in the record indicating that Banks, Huntley & Company were to buy the bonds, or any of the bonds, at prices set forth in the release schedule, for less than which the bonds were not to be sold; nor is there anything in the record, as contended for by the respondent, that the bonds

were to be sold or purchased by the defendant at less than the prevailing market prices.

A large portion of the respondent's brief is devoted to a discussion of the credibility of the witness Schenk. Irrespective of whether the testimony of the witness Schenk be considered reliable or unreliable, the testimony of the defendant's witnesses which we have set forth herein shows without any equivocation that the defendant, whether it sold or bought the bonds, was bound by the prevailing market price.

A considerable portion of the briefs also is devoted to a discussion of the arrangement which had to be made for the release of the bonds through the Farmers & Merchants National Bank of Los Angeles. This discussion, however, has no relevancy to the questions presented for our consideration.

On February 11, 1932, the following letter was addressed to the defendant company by Floyd H. Schenk, to wit:

"You are authorized to sell for our account all of the bonds that the treasurer of the City of Los Angeles, County of Los Angeles, State of California, and City of Burbank holds for our account, as shown by the schedule herein below, at the prevailing market price, but in no case at a price to exceed one percent less than the prices shown by the following schedule:" (Here follows a schedule of all the bonds); concluding as follows: "We have authorized the Farmers & Merchants National Bank of Los Angeles to receive your orders for any of these bonds, together with your check, which will include in all instances the interest to the date of delivery, and they will in turn complete the transaction with the various treasurers."

Enclosed with this letter was a letter which was sent to the Farmers & Merchants National Bank, authorizing that bank to surrender the bonds upon receipt of a check in a sum less than the schedule of prices named, not exceeding one per cent. This authorization of the Farmers & Merchants National Bank to surrender the bonds and deliver them to the defendant at a less figure than the prevailing market price had nothing to do, and has nothing to do with the authorization of the defendant to sell the bonds at the prevailing market price, nor has it anything to do, nor did it have anything to do with the right of the defendant to purchase a

considerable portion of the bonds at less than the prevailing market price.

We do not need to discuss the testimony or the contention of the respondents in relation to whether the defendant agreed, or did not agree to put up any money of its own in view of the finding of the court that the defendant was not entitled to any commission for its services.

We may here state that there is absolutely no evidence in the record to the effect that the defendant was authorized either to sell or to buy the bonds, or any portion thereof, for the sum of $260,105.92, while the testimony shows that the prevailing market price of the bonds was the sum of $266,582.21.

While the record set out in the transcript, taken from the books of the defendant, shows that the defendant realized in the sale of the bonds the sum of $266,582.21, the record is clear, as shown by the testimony of the vice-president of the defendant, that this amount was not remitted to the plaintiff, or to anyone authorized to receive the money on behalf of the plaintiff. The vice-president of the defendant testified substantially as follows: The total amount which my company remitted to the plaintiff bank as representing the alleged sale price of the bonds was $262,923.19. We remitted this to the Farmers & Merchants National Bank through the Security Bank for credit to the plaintiff bank. The Security Bank remitted it for our account to the Farmers & Merchants National Bank, and the Farmers & Merchants in due course remitted it to the Magnolia Park National Bank.

We may add that the total amount of money received by the plaintiff bank was the sum just stated.

The witness Lester, on behalf of the defendant, in explanation of a letter which he had written to the plaintiff, testified as follows: ''When I wrote 'All these bonds were sold at the prevailing market price and in all but one instance this price equals or exceeds the minimum price mentioned in your letter of February 11,' I meant that the price remitted to the Magnolia Park National Bank was the prevailing market price at the time of the transaction.''

■ There is absolutely no testimony in the record to the effect that the defendant was authorized to fix its own price in the purchase of the bonds, but the testimony of Mr. Lester and Mr. Wright to which we have referred, is unequivocal

that the price to be paid by the defendant was the prevailing market price. It must be borne in mind in this connection that the defendant had already made sale of $120,000 worth of the bonds at the prevailing market price.

As we have said, there is absolutely no testimony to support novation as claimed by the respondent, nor is there any testimony in the record to support the finding of the court that the plaintiff had ratified the acts of the defendant in withholding the secret profits which we have heretofore mentioned.

The record shows that on or about February 24, 1932, the plaintiff becoming apprehensive that the transaction had not been entirely regular, to say the least, addressed a letter to the respondent making inquiries as to the sale of the bonds, and whether the bonds were sold in accordance with the original agreement of February 11, 1932, which we have set forth herein. This letter was not replied to by the respondent for a number of weeks, and in the reply, as we have shown, N. L. Wright, an officer of the company, reported and represented to the plaintiff that the bonds had all been sold for the prevailing market prices in all but one instance. There was no intimation in the letter that Banks, Huntley & Company had bought the bonds for themselves, and there was a direct affirmation that the amount remitted to the Farmers & Merchants National Bank for the plaintiff was the full and correct prevailing market price. This, of course, as we have shown by the funds remitted by the defendant and the moneys received by the defendant, was not a correct statement of the transaction.

There is nothing in the record to show that the plaintiff bank, when receiving the lesser sum of money than should have been remitted, had any knowledge whatever of the secret profit made by the defendant. The claim of the respondent that the bank having kept the money and not having turned it back is in no position to now claim the right to the secret profit, is entirely without foundation in law. The allegation in the amended answer of the defendant is in the following words: ''Thereafter, and on or about the 19th day of February, 1932, the said plaintiff being fully advised, and with full notice and knowledge of the said new oral agreement, and its terms and conditions, ratified, confirmed and approved the same, and with said knowledge and notice, and as

a part of the ratification, approval and confirmation, accepted the benefits and proceeds of the said new oral agreement.''

As we have shown by the record, and as conclusively appears therefrom, there is not a word of testimony supporting the allegation, and therefore the finding of the court to that effect is wholly unsupported. The following cases support the statement that there can be no ratification without full knowledge: *Puget Sound Lumber Co.* v. *Krug,* 89 Cal. 237 [26 Pac. 902]; *Dean* v. *Bassett,* 57 Cal. 640; *Munroe* v. *Fette,* 1 Cal. App. 333 [82 Pac. 206]; *Lindow* v. *Cohn,* 5 Cal. App. 388 [90 Pac. 485]; *Hutchinson* v. *Scott, Magner & Miller,* 35 Cal. App. 171 [169 Pac. 415]. This last-mentioned case contains a number of citations supporting the fact that ratification can be held only when that ratification is based upon knowledge of the transaction.

We might cite a larger number of cases supporting the rule which we have stated, but it is so commonplace that an agent must deal openly and honestly with his principal, and cannot be allowed to retain secret profits, that we deem it unnecessary to cite authorities.

The record in this case showing without dispute that the defendant was to handle the transaction without compensation; that the defendant was obligated to sell the bonds for the prevailing market price; that the defendant did not do so; that the defendant reported to the plaintiff that it had sold the bonds for the prevailing market price, the record showing that the plaintiff had no knowledge of the retention of a secret profit by the defendant at the time it accepted the remittance of the money made by the defendant; the court having found that the defendant was not entitled to any compensation for its services; it necessarily follows that the judgment must be reversed with directions to the trial court to find in accordance with the testimony as we have just outlined, and then enter judgment in favor of the plaintiff for the amount of the secret profits retained by the defendant, as set forth in this opinion, following the procedure approved in the case of *Essey* v. *Phillips,* 136 Cal. App. 3 [28 Pac. (2d) 38].

Judgment reversed with directions.

Thompson, J., and Pullen, P. J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 3, 1936. Shenk, J., Conrey, J., and Thompson, J., voted for a hearing.