[L. A. No. 21360. In Bank. June 29, 1951.]

CALIFORNIA HOME EXTENSION ASSOCIATION (a Corporation), Appellant, v. BERT HILBORN, Respondent.

Robert E. Austin, John N. Helmick and Joseph Seymour for Appellant.

Jerome L. Richardson and George E. Jones for Respondent.

EDMONDS, J.—California Home Extension Association sued for money had and received. By answer and cross-complaint, Hilborn alleged a joint venture for the sale of land and was awarded $36,500 as his share of the profits of the enterprise. The corporation's appeal from that portion of the judgment principally attacks the findings as not being supported by the evidence and charges that the judgment is inconsistent with the pleadings and with the findings.

Hilborn alleged the following facts:

On June 1, 1940, Home Extension Association, through its agent M. V. Hartranft, induced him to terminate his then employment to become a vice president, assistant secretary and sales manager of the corporation. Compensation for his services was fixed at 50 per cent of the net profits of all land sold as a result of the sales promotions conducted by him, with a $75 per month drawing account to be charged against such profits. Believing these representations, the pleading continued, Hilborn entered into an oral contract with the corporation, through Hartranft, in accordance with them. The corporation promised to reduce the oral contract to writing, and continued to do so until January 1, 1945.

Hilborn also alleged that he accepted the terms of the oral contract and, from June 1, 1940, until the filing of his cross-

complaint, fully performed all of his duties under it. He managed various sales campaigns and collected monthly payment for the sales of property and commissions on property sold and resold by the corporation. All payments and contracts of sale were sent to the corporation at its head office, and no money was retained by him. On January 1, 1945, the corporation notified Hilborn that the contract was terminated. Two months later, Hartranft died.

The issues presented by Hilborn largely concern the nature of his association with the corporation. More specifically, the amount, if any, now due to or from him depends upon whether he was employed on a salary, or with the right to a share in the profits of the sales made under his direction. There is no dispute in regard to the services he performed, but the evidence as to the basis of compensation is sharply conflicting.

The record shows that the corporation was organized and controlled by Hartranft. He was its president, managing director, and the holder of practically all of its stock. Hartranft determined all matters of business and policy, and drafted the resolutions which, without the formality of a directors' meeting, were shown on the corporate records as having been adopted.

For six months following June, 1940, Hilborn's services were performed at the main office of the corporation in connection with a land selling program known as "War Gardens." For the next two or three months, he worked on another tract of land. This project, however, was abandoned as a failure. The corporation then acquired property in Riverside County, and opened an office in which it installed Hilborn as manager in charge of the sales campaign. Hilborn remained there until his employment was terminated.

The terms of Hilborn's association were not reduced to writing at the time of the commencement of his services for the corporation. He testified that, when the matter was first discussed, Hartranft said "he would invite me to come down and join the California Home Extension Association on a campaign program in which we would divide equally the profits to operate—that he had three or four places in mind that he would like to establish colonies, and in going down that was the consideration that I went under."

In March, 1940, the parties met in San Francisco and, at that time, Hilborn testified, "I told him that I would go down and work up a colony with him, using my ability as a cam-

paign operator, providing he had such a colony in mind and wanted to undertake it; and at that time, the compensation was fixed and reiterated . . . He said that if I would come down under those conditions that my compensation would be fifty per cent of the profits of such a campaign . . . I told him I would do it.''

For a written contract, Hilborn relied upon a document which, according to his testimony, he received by mail from Hartranft in May, 1941. It reads as follows:

''We hereby elect Bert Hilborn, a stockholder, in the California Home Extension Association, as a vice-president and assistant Secretary of CHEA. He is also elected manager of the Arlington Branch of this corporation and will act as our sales manager for the La Sierra District land-selling *campaign*, on the same basis as the Crestmore campaign now being liquidated. He shall continue to receive a drawing *account* plus actual expenses, of Seventy Five ($75.00) dollars per month and his compensation as sales campaign manager shall be on a fifty-fifty basis of the profits acquired by CHEA. All titles of purchase and sale; all legal matters and determination of policy, as well as advertising, will be conducted by CHEA.

Cal Home Extension Assn.<br>By M V Hartranft<br>Prest''

Hilborn said that he signed the original of this document and gave it to Hartranft, retaining the carbon copy. He identified the signature as that of Hartranft, with which signature he was familiar. Mrs. Hartranft also testified that she recognized her husband's signature on the letter.

The corporation disputed the authenticity of the signature, and produced a handwriting expert who stated that, in his opinion, the signature is a tracing. He also said that the document was typed by the same person and upon the same machine as other papers admittedly written by Hilborn. Hilborn declared that he had not traced the signature, and denied that he wrote the letter or that it was produced upon the typewriter in his possession with his knowledge. The record includes evidence that the typewriter upon which it is claimed the letter was written was not in Hilborn's possession until two or three weeks after the date of the questioned document.

Upon this evidence, the trial court found that the relationship was that of joint venturers. Judgment was rendered on

the basis of the net profits of the land sold as a result of real estate campaigns conducted by Hilborn, less the amounts of certain cash advances.

In attacking the findings and judgment, the corporation contends that, as a matter of law, the testimony of Hilborn concerning the letter assertedly signed by Hartranft is unworthy of belief. For that reason, it argues, the judgment should be reversed. However, Hilborn's identification of the document, taken in connection with other evidence concerning the dealings he had with the corporation, does not show such evidentiary weaknesses and abnormalities as to render it improbable that the transactions occurred as related by him. Certainly, the evidence is not such as to compel a finding in favor of the corporation.

The appellant points to the fact that during the first 13 months of his association, Hilborn was paid, from time to time, amounts ranging from $20 to $30, which were entered upon the corporation's books as "salary." The record also includes a letter from the auditor of the corporation to Hilborn stating that Hartranft " . . . thought it best to make a straight salary proposition for you instead of the way you have been going. Therefore starting the 1st of July you will be paid $200 per month, which includes the $30.00 car allowance." The corporation also relies upon the records of the corporation which list as "salary" semimonthly payments to Hilborn for three and one-half years, which, as adjusted for income tax and other deductions, represent compensation at the rate of $200 per month. Checks for these amounts, drawn by the corporation for salary, were received and retained by Hilborn without question or objection, which fact, the corporation argues, strongly indicates an acceptance of salary as payment in full for his services.

In opposition to this evidence is the testimony of Hilborn to the effect that he was employed upon a profit-sharing basis. The letter assertedly received by him corroborates his statements in this regard. It also appears that he was elected vice president and assistant secretary of the corporation and appointed as manager of the Arlington Branch of the corporation and sales manager for the Arlington district.

Hilborn's explanation of the corporate records was that checks issued to him were entered as "salary" solely for the purpose of interoffice bookkeeping. They were received by him, he said, under the terms of his agreement providing for

a drawing account and after Hartranft told him his advances would be charged to him in that way. The testimony of the auditor of the corporation is to the same effect. He said that, although the checks for $200 were listed "'Salary' on the books," they were payments to Hilborn for expenses, allowance for automobile expense and advances upon the drawing account.

Hilborn testified to a conference, occurring a few days after Hartranft's death, at which Mrs. Hartranft and Robert Austin, attorney for the corporation, were present. At the conference, Hilborn said, he was asked to return to work with the corporation, and he agreed to do so. However, when Austin dictated an agreement which was signed by Mrs. Hartranft on behalf of the corporation, Hilborn refused to sign it. This document was received·in evidence. Hilborn denied having said at the conference that his former association with the corporation was as an employee for a salary of $200 per month and expenses.

The corporation then offered the testimony of Mrs. Hartranft and Robert Austin. Austin was asked to relate the conversation at the conference. After various objections to the testimony were sustained, the corporation made an offer of proof that Hilborn had stated his claims against the corporation as being for five or six hundred dollars advanced by him to the corporation, damages for wrongful attachment of his property and the filing of a complaint against him with the Real Estate Commission. Another statement by him, according to the offer of proof, was that his employment with the corporation had been for· a salary of $200 per month plus expenses and he wished to return to work at the same salary. The objection to the evidence was sustained upon the ground that " . . . the conference of the parties was for the purpose of compromising their difficulties, and, therefore, is not admissible." The corporation pointed out that the evidence was offered for the purpose of impeaching Hilborn, but the court refused to change the ruling. The same objection was sustained as to the testimony of Mrs. Hartranft concerning the conversations at the conference.

The corporation contends that the trial court erroneously refused to admit this evidence which, it asserts, contradicts Hilborn's claims in the case and is admissible as an admission against interest. (Code Civ. Proc., § 1870, subd. 2.) Hilborn argues that the ruling of the trial court does not constitute reversible error because the offered testimony relates

principally to collateral matters and, even if admitted, would not have changed the judgment of the court.

 Although the statements were allegedly made during a conference at which the parties were attempting to compromise their difficulties, that fact does not justify exclusion of the evidence if it was otherwise admissible. (*Rose* v. *Rose,* 112 Cal. 341 [44 P. 658]; *Scott* v. *Sciaroni,* 66 Cal.App. 577 [226 P. 827].) The major issue is whether Hilborn was associated in a joint venture, the profits of which were to be divided equally, or was an employee at a salary of $200 per month and expenses. The evidence upon this point is highly conflicting. Hilborn relied upon his own testimony in regard to the letter which, he claims, was signed by Hartranft and his explanation of the corporate records showing checks issued to him for "salary." Clearly any evidence as to a statement by Hilborn that he had been working for a salary of $200 per month and expenses, if believed, would have discredited his testimony and refuted his claim for a share of the profits from the sales of land. Under these circumstances, it cannot be said, as Hilborn argues, that the evidence was merely cumulative upon collateral matters. It was vital to the defense of the corporation and the ruling excluding it was prejudicially erroneous.

That portion of the judgment appealed from is reversed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.