[Civ. No. 22136. Second Dist., Div. Two. July 3, 1957.]

STORE OF HAPPINESS (a Corporation), Respondent, v. CARMONA AND ALLEN, INCORPORATED (a Corporation), Appellant.

Edward I. Gorman for Appellant.

Abe Richman for Respondent.

ASHBURN, J.—Plaintiff Store of Happiness, a corporation, sued defendant Carmona and Allen, Inc., a corporation, for money had and received and recovered judgment in the sum of $4,592.07. From that judgment this appeal is taken. Defendant cross-complained, pleading common counts, and recovered from May Diamond Company, a corporation, the sum of $2,145. This judgment covers a period of time different from that embraced in plaintiff's judgment and no complaint is made by any party with respect to it. Store of Happiness and May Diamond Company are controlled by the same people, are treated by counsel for both sides as the *alter ego* of each other and are interchangeably referred to as plaintiff. We shall follow the same pattern.

Plaintiff's suit in assumpsit seeks recovery of secret profits reaped by defendant while acting as its agent in the placing for it of certain spot advertising upon television station KTTV in the city of Los Angeles.

Appellant challenges first the implied finding of agency.[1] In considering a claim of insufficiency of the evidence, which is the present contention, the court of review must accept as established all testimony and all inferences favorable to re-

[1]The findings follow the language of the common count, which is permissible; inherent therein are implied findings in accordance with the evidence presented by the prevailing party. (*Voss* v. *Friedgen,* 141 Cal. App.2d 135, 136 [296 P.2d 424].)

spondent. (*Nichols* v. *Mitchell*, 32 Cal.2d 598, 600 [197 P.2d 550].) We proceed upon that basis.

The business of defendant is that of operating an advertising agency; it so alleged in its cross-complaint. ■ "The distinguishing features of agency are its representative character and its derivative authority" (2 C.J.S. § 2a, p. 1026).
■ *Wallace* v. *Sinclair*, 114 Cal.App.2d 220, 229 [250 P.2d 154] : "Agency is the relation that results from the act of one person, called the principal, who authorizes another, called the agent, to conduct one or more transactions with one or more third persons and to exercise a degree of discretion in effecting the purpose of the principal. The heart of agency is expressed in the ancient maxim: " '*Qui facit per alium facit per se.*' " Plaintiff is engaged in the retail jewelry business and advertises through television, newspaper and direct mailing. When its relationship began with defendant's predecessor (Carmona and Allen, a partnership), Mr. Allen told plaintiff's general manager, Mr. Leo Westen, he "wanted to handle our account . . . he would represent us and we would buy time through him," referring to television time for spot announcements. Westen testified that he accepted "their offer to act as [our] advertising agency." Plaintiff thereupon wrote the Carmona-Allen agency as follows: "In accordance with our telephone conversation, we desire as of this date to employ you as our exclusive advertising agency to procure our television spots until such time as either of us desires to terminate this arrangement. We will send you a check on the 10th of the following month for all advertising procured for the proceeding [sic] month in accordance with the arrangement outlined by us." The corporate defendant herein was but a continuation of the partnership and no further distinction will be drawn between them.

Defendant's activity consisted of placing "leads" for plaintiff on television and buying for it the necessary spot time. A lead is advertising designed to produce telephonic or mail response which is then pursued through calls made upon the inquirers by a crew of salesmen. The dispute herein is confined to advertising done through television station KTTV. The practice pursued was that defendant would locate and buy from KTTV desirable spot time and would make a contract with it for same. The parties to that contract were defendant and KTTV, Inc. Defendant in each instance would quote a flat price to plaintiff, which was interested in obtaining leads at the lowest possible price; it would accept the offer when

satisfactory. The television company would bill defendant for the time so used; it would pay the bill and in turn would invoice plaintiff for same and plaintiff would pay it the amount of that invoice.

The contract between defendant and KTTV, Inc., described defendant as the "Agency." It recited that "the Agency desires to avail itself of the said broadcasting facilities on behalf of its client May Diamond Co." Paragraph (1) says: "KTTV agrees to furnish the necessary facilities of the aforesaid television station for broadcasting and on behalf of the Agency to broadcast the television programs hereinafter described in behalf of Agency's client for the advertising of its products and services acceptable to KTTV." It specifies a gross charge per week, an "Agency Commission" stated in dollars but computed at 15 per cent of the gross charge, and further says: "KTTV will bill Agency weekly and Agency shall pay the charges within 1 week after the end of the week in which they are incurred. Items of gross charges followed by an asterisk are subject to an agency commission of 15 per cent, if this agreement is with a recognized agency." Defendant had no goods or other tangibles to sell, nor did it own television time other than that procured for plaintiff; it had only services to offer. The evidence abundantly establishes that defendant was plaintiff's agent and there seems to have been no question about it prior to the trial. It was then vigorously contended that defendant was an independent contractor, but that claim having been rejected by the trial judge and the evidence being sufficient to sustain his finding, the contention no longer can be entertained.

█ The controversy revolves around the agency commission and certain "Frequency Discounts." The 15 per cent commission specified in the contracts between the agency and the televiser is the one customarily paid for such services. The custom was well established, known to plaintiff and relied upon by it when employing defendant as its advertising agent. There was nothing said between the parties at any time about the amount of the commission, so the custom entered into the contract as one of its implied terms. "Unexpressed provisions of a contract may be inferred from the writing or external facts. Thus it is well settled that a contract need not specify price if it can be objectively determined. . . . In *Buckner* v. *Leon & Co.* 204 Cal. 225, it was said at page 227 [267 P. 693] : 'It is the general rule that when there is a known usage of the trade, persons carrying on that trade are deemed

to have contracted in reference to the usage unless the contrary appears; that the usage forms a part of the contract, and that evidence of usage is always admissible to supply a deficiency or as a means of interpretation where it does not alter or vary the terms of the contract,' quoting from *Hind* v. *Oriental Products Co.*, 195 Cal. 655, 667 [235 P. 438]. (See Civ. Code, §§ 1655, 1656; Code Civ. Proc., § 1870, subd. 12; 12 Cal.Jur.2d, Contracts, § 140.)'' (*California Lettuce Growers* v. *Union Sugar Co.*, 45 Cal.2d 474, 482 [289 P.2d 785, 49 A.L.R.2d 496].) To the same effect, see *Guipre* v. *Kurt Hitke & Co.*, 109 Cal.App.2d 7, 14 [240 P.2d 312]. Thus defendant's commission was fixed at 15 per cent and no more.

The term ''frequency discount'' embraces an allowance made to the advertiser by KTTV as an incentive and reward for continuous use of its facilities, the amount of such discount ranging from 15 per cent to 22½ per cent of the gross. The ''more times the spot is on the larger the discount, up to what is known as end rate'' of 22½ per cent. This discount is distinct from the agent's commission. It is given to the advertiser and goes to it so long as the station is used regardless of any change in its advertising agency.

Billing was done by KTTV to the agent only; its invoices showed the gross price, agent's commission, frequency discount and the net amount remaining after deducting both of the last named items. This amount the agent would pay to KTTV. In turn it would bill plaintiff for the gross amount, keeping for itself the 15 per cent commission and the frequency discount.

Plaintiff was ignorant of the practice of KTTV to make such allowances and was never told anything about them until the fact of their receipt by defendant was discovered by Mr. Westen in 1955 after a period of about two years of their secret appropriation by defendant. He then claimed same for plaintiff but without results. When his initial demand was made Mr. Allen said ''that they needed that money to supplement what they were making from us.'' Mr. Carmona told Westen ''that he told Bill [Allen] when it first started he should have advised me [Westen] and we should have talked about this.'' Later, ''Mrs. Levitt asked Mr. Carmona why wasn't this brought up before, why didn't he say something about it, about getting the frequency discount and never telling us about it, and Mr. Carmona, to quote him, said it was an unanswerable question.''

Plaintiff urges that this was a secret profit received by its

agent which belongs to it in equity and in good conscience. Defendant's argument is that it quoted plaintiff a flat spot price in each instance, which plaintiff agreed to pay and did pay. The price so quoted was the gross charge of KTTV. From this circumstance of a flat figure defendant deduces the conclusion that it was an independent contractor and hence there could be no secret profit recoverable by plaintiff. It is shown above that the relationship was that of principal and agent and it follows therefrom that the agent could not keep for itself moneys belonging to the principal without the knowledge and consent of that employer. Defendant was in substantially the same position as a real estate broker who has been employed to represent a buyer; the latter knows the commission is to be paid by the seller, but this fact does not alter the rule that his agent cannot appropriate to himself money or property belonging to the buyer which comes into the broker's possession as an incident to the agency. The basic duty of loyalty which pervades the entire field of agency forbids this. (See *Laurence* v. *Kilgore*, 154 Cal. 310 [97 P. 760]; *Great Western Gold Co.* v. *Chambers*, 155 Cal. 364 [101 P. 6]; *Blandy* v. *Bowden*, 217 Cal. 61 [16 P.2d 993]; *Magnolia Park Nat. Bank* v. *Banks, Huntley & Co.*, 10 Cal.App. 2d 22, 30 [50 P.2d 1064]; 2 Cal.Jur.2d § 104, p. 771; 12 C.J.S. § 42, p. 102.)

■ In effect, defendant represented to plaintiff in each instance of fixing a price that it would be the gross figure named by KTTV; actually KTTV's price was the gross price less the frequency discount. Any profit thus made belongs to the principal. (9 Cal.Jur.2d, § 54, p. 203.) It may be recovered in an action for money had and received though the cause of action rests basically upon fraudulent conduct. "It must be borne in mind that defendant was plaintiff's advertising manager and represented plaintiff in its contractual dealings with the parties from whom he was receiving the rebates or payoffs. As plaintiff's agent he occupied a confidential status akin to that of a fiduciary. (2 Cal.Jur.2d, Agency, § 104, p. 771.) He was bound to a duty of good faith towards his principal and was precluded from making secret profits for his own benefit from the subject matter of the agency." (*Sears, Roebuck & Co.* v. *Blade,* 139 Cal.App.2d 580, 590 [294 P.2d 140].)

Appellant relied upon a defense of account stated and now urges error in the court's finding that there was no such accord between the parties. ■ The finding is expressly based

upon the fact that defendant failed to inform plaintiff of its receipt and retention of frequency discounts. Appellant's argument is that rendition and payment of invoices without objection creates an account stated and that this is true even though the parties are principal and agent. (*California Bean Growers Assn.* v. *Rindge Land & Nav. Co.*, 199 Cal. 168, 181 [248 P. 658, 47 A.L.R. 904].) This may be conceded but it does not take account of the matter of impeachment of the prima facie showing of agreement upon the account. █ Suppression of pertinent and material facts by a fiduciary, such as an agent, is a fraud sufficient to impeach his showing of account stated. "While a debtor's misrepresentation to his creditor of the amount due is not ordinarily, in the absence of a relation of trust or confidence requiring a full disclosure of the facts, considered as a fraud on the creditor entitling him to re-examine an account stated, yet where any relation of trust or confidence exists between the parties that demands the communication of full and complete information as to their dealings, any concealment or misrepresentation amounts to such fraud as to entitle the party injured to re-examine an account stated." (1 Cal.Jur.2d, § 61, p. 394.) See also *Kinkle* v. *Fruit Growers Supply Co.*, 63 Cal.App.2d 102, 114-115 [146 P.2d 8]; *White* v. *Thompson*, 40 Cal.App. 447 [180 P. 953].) The finding that there was no account stated in this case is correct.

Numerous claims of error in the rulings upon evidence require but brief comment.

The claim that there was error in admitting evidence of custom is refuted by cases above cited, namely, *California Lettuce Growers* v. *Union Sugar Co., supra,* 45 Cal.2d 474, 482, and *Guipre* v. *Kurt Hitke & Co., supra,* 109 Cal.App.2d 7, 14. Cases cited by appellant are not to the contrary.

Complaint is made concerning receipt of evidence of negotiations for settlement which followed Westen's discovery of the frequency discount situation and demand for payment of same to plaintiff. █ Of course, evidence of efforts to compromise are not admissible (19 Cal.Jur.2d § 406, p. 145) except to the extent that they contain admissions against interest or evidence otherwise admissible. (*California Home Extension Assn.* v. *Hilborn,* 37 Cal.2d 459, 465 [235 P.2d 369].) Counsel concedes "that since there is no controversy as to the amount of the judgment and since the conversation in question primarily involves amounts of money, the error may not be prejudicial." Clearly this is not a case in which,

assuming error, this court could say "that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People* v. *Watson*, 46 Cal.2d 818, 836 [299 P.2d 243].)

Mr. Norins, local sales manager for KTTV, when asked to explain frequency discounts, said in part: "It is kind of a bulk discount figure which depends upon the number of times an advertiser uses the spot. The more times he uses the spot the less it costs him." After further discussion as to what the advertiser would thus earn, the witness was asked: "Who is entitled to that frequency discount?" Objection being overruled he repeated what he had just said, namely, that the discount is granted to the advertiser. Conceding that the form of the question was objectionable and the ruling erroneous it cannot be said that it was prejudicial.

██ Four rate cards of KTTV which explain the frequency discount and are available to advertisers were received in evidence over objection. Also the contracts made between defendant and KTTV. It is now said that they are hearsay. There is no merit in this contention. In both instances the writing was independent evidence of a pertinent fact,—in the nature of a verbal act rather than a narrative of a past event. ██ "Where the fact that a particular statement was made is of itself a relevant fact, regardless of the truth or falsity of such statement, the statement is admissible in evidence as an independently relevant fact. Where, regardless of the truth or the falsity of a statement, the fact that it has been made is relevant, the hearsay rule does not apply, but the statement may be shown. Evidence as to the making of such statement is not secondary but primary, for the statement itself may constitute a fact in issue, or be circumstantially relevant as to the existence of such a fact." (31 C.J.S. § 239, p. 988.) ██ The rate card which explains frequency discounts is a standing offer to advertisers to allow them, not their agencies, the discounts. The contracts between defendant and KTTV constitute admissions of defendant that it was acting as an agent for plaintiff.

Appellant's opening brief contains 49 assignments of error in excluding evidence offered by defendant. Thirty-five of them refer to questions designed to establish circumstantially the fact that defendant was an independent contractor. Were it not for the specific agreement for an agency representation which the parties had made, some of these inquiries would

have been proper. But the rulings cannot be said to be prejudicial when viewed in the light of the entire record.

 Next counsel urges that, evidence of custom having been received over his objection, it was error to reject his proffered counter showing. In this connection he cites 10 specific rulings which sustained objections to questions designed to show a custom of advertising agencies to withhold from the advertiser, the principal, frequency discounts, which of course belonged to the advertiser. Such a custom would sanction a fraud and could not be recognized as binding upon anyone. (See 55 Am.Jur., § 16, p. 278. Also *People* v. *Kiss,* 125 Cal. App.2d 138, 142 [269 P.2d 924].) There was no error in this series of rulings.

 Four rulings are challenged which sustained objections to questions concerning the uncontradicted fact that contracts with KTTV were made by defendant in its own name and not by plaintiff. If answered favorably to defendant's contentions they would have added nothing to the record nor would they have altered the fact that the parties to this action had agreed upon a representation which constituted an agency as matter of law.

We find no miscarriage of justice in this case.

Judgment in favor of plaintiff is affirmed.

Moore, P. J., and Fox, J., concurred.