[Civ. No. 18693. First Dist., Div. One. Nov. 28, 1960.]

BARBARA BEATRICE KASTL MANCHA BURKE, Appellant, v. THE HIBERNIA BANK (a Corporation) et al., Respondents.

[Civ. No. 18776. First Dist., Div. One. Nov. 28, 1960.]

BEVERLY W. THEOBALD et al., Appellants, v. THE HIBERNIA BANK (a Corporation) et al., Respondents.

740

C. Ray Robinson, Eugene A. Mash, O'Gara, McGuire & Danielson and Walter McGovern for Appellants.

Tobin & Tobin, Sullivan, Roche, Johnson & Farraher and Brobeck, Phleger & Harrison for Respondents.

TOBRINER, J.—In these two actions appellants, as successors in interest of Thomas Cian and Michael Kane, seek a determination of their asserted rights in The Hibernia Bank. Appellants would fashion a sword of factual issues to pierce respondents' summary judgments, but the affidavit upon which they rely consists of inadmissible evidence, while respondents' affidavits state facts sufficient to sustain the judgments.

We analyze in the first instance the complaints; in the second, respondents' affidavits in support of the summary judgments.

The complaints in these appeals are almost identical; both are framed in four counts. We present a synopsis of the first and third counts, respectively; we need not discuss the other two counts since they have been abandoned by appellants.

Appellants allege that on April 12, 1859, Hibernia Savings and Loan Society was incorporated pursuant to ''An Act to provide for the Formation of Corporations for certain purposes.'' (Stats. 1853, p. 87.) Although its certificate of incorporation provided for a stock structure, this Hibernia of 1859 functioned as a membership corporation. Michael Kane became a member of this corporation on April 12, 1859; Thomas Cian acquired his membership on November 12, 1860. On August 29, 1864, in accordance with the members' prior authorization, Hibernia Savings and Loan Society was incorporated as a membership corporation under ''An Act to provide for the Formation of Corporations for the Accumulation and Investment of Funds and Savings.'' (Stats. 1862, p. 199, as amended by Stats. 1864, p. 531.) The later corporation's board of directors adopted a set of by-laws on September 29, 1864, by which, and together with subsequent amendments, they intended to restrict membership in Hibernia of 1864.

Thomas Cian, according to the complaint, on May 11, 1865, assigned his account and membership to John Meiler, who continued to be a member until his death on April 30, 1914. Appellant Burke is the sole heir of John Meiler.

The complaints further allege that by the year 1945, Hibernia of 1864 had acquired a surplus fund which exceeded $8,000,000. In 1946 Hibernia obtained an in rem judgment determining its membership without notice to John Meiler or Michael Kane or their successors in interest who were members thereof; therefore, this judgment is not binding on appellants.[1] In 1947 the fifteen adjudicated members of Hibernia converted the society into a stock corporation; to each of these members this stock corporation, subsequently called The Hibernia Bank, issued 18,666⅔ shares of stock in lieu of the reserve fund. Appellants further allege that respondents engaged in a conspiracy between 1944 and 1947 by which

---

[1] We do not pass upon whether appellants are barred by this judgment since our determination of other issues renders this question moot.

they intended to deprive the appellants of their rights as members of the society.

Countering these allegations respondents filed motions for summary judgments. Their supporting affidavits set forth the facts which we recite below.

In 1859 Michael Kane opened an account with Hibernia Savings and Loan Society, but by withdrawal of the credit balance he closed this account on August 7, 1862. On July 28, 1866, he opened a new account with Hibernia of 1864. Michael Kane died on November 1, 1899; on October 9, 1924, his account was closed by payment of the credit balance to the order of Elizabeth Buckley, as executrix of the estate of Michael Kane.

Thomas Cian opened an account with Hibernia Savings and Loan Society on November 12, 1860, and though he withdrew the credit balance in this account on July 24, 1862, he made another deposit on November 19, 1862. On May 11, 1865, Cian assigned this account to John Meiler. Hibernia of 1864's board of directors neither elected Cian nor Meiler to membership, and neither Cian nor Meiler ever signed the "Agreement to Become Members." The State of California, pursuant to a judgment of escheat, obtained the credit balance in this account on April 21, 1933.

The Hibernia Savings and Loan Society was incorporated in 1864 and on September 29th of that year adopted certain by-laws. The fourth article of the by-laws reads: "All persons who were members of The Hibernia Savings and Loan Society on the thirty-first day of August, 1864, shall be deemed and considered members of this corporation, and the signatures of such persons to an agreement on their part to become members of this corporation, and ratifying and confirming the incorporation of said The Hibernia Savings and Loan Society, as directed by a resolution of its Board of Trustees, adopted Aug. 8th, 1864, shall be procured as speedily as may be. *Other persons may be allowed to become members of this corporation by a vote of the Board of Directors, but not otherwise.* Membership shall not pass with the ownership of moneys deposited with or under control of the corporation." (Emphasis added.)

The by-law was amended on numerous occasions; on October 19, 1888, and until April 17, 1915, it read: "The only members of this Corporation are the persons who have signed the agreement . . . [to become members] and who have kept accounts open with the corporation since they respectively

signed said agreement. *Other persons may become members thereof by vote of the Board of Directors, and by signing said agreement, and keeping an open account with the Corporation, but not otherwise.* Membership shall not pass with the ownership of moneys deposited with or under the control of the Corporation. Membership ceases when a member once closes his or her account. . . . Any person shall cease to be a member of this Corporation . . . who shall not have continuously and at all times, at least one hundred dollars to his or her credit upon an open deposit account. . . . Membership therein shall continue only so long as such credit shall exist, and shall cease when such credit shall cease to exist.'' (Emphasis added.)

To defeat the impact of these by-laws appellants rely upon an affidavit of William Lyle. The affidavit recites that Alf. R. Kelly, the uncle of William Lyle, had been a member of Hibernia; that, upon his death, his membership passed to his heirs, and in 1946 or 1947 Hibernia paid the heirs for this membership an amount which the affiant believes exceeded $100,000. Lyle also states that he is the grandson of James R. Kelly, deceased, who was a member and depositor of Hibernia; affiant alleges he went to see Cyril R. Tobin, a director of Hibernia, and requested payment for his grandfather's interest in Hibernia; Tobin responded by offering $35,000, but, upon affiant's failure to reply, accused him of blackmail and stated that affiant had no interest in Hibernia.

The summary judgments declare, among other things, that appellants have no interest in respondent bank; that ''membership in the defendant bank'' acquired prior to the conversion of the bank to a stock corporation in 1947, including any membership acquired by being a member of Hibernia of 1859 on August 29, 1864, or at any time prior to the 1864 by-laws, was nontransferable and nondescendible.

While we have discussed in companion cases many of the issues which arise here, we shall examine briefly two matters which appellants particularly emphasize: (1) the triable issues of fact asserted by appellants, and (2) appellants' position and citations as to transferability and descendibility.

 As to the first, appellants' argument that they have raised triable issues of fact, which defeat the summary judgments, must fail upon the ground that their counteraffidavits do not set out competent evidence upon which such issues can rest. As we have pointed out in the companion

cases, a summary judgment will stand if the supporting affidavits state facts sufficient to sustain a judgment and the counteraffidavits do not proffer competent and sufficient evidence to present a triable issue of fact. (*Coyne* v. *Krempels* (1950), 36 Cal.2d 257, 261 [223 P.2d 244]; Code Civ. Proc., § 437c.) ▆ The summary judgment procedure seeks to discover, through the media of affidavits, whether the parties possess evidence which demands the analysis of trial. (*Schessler* v. *Keck* (1956), 138 Cal.App.2d 663, 668 [292 P.2d 314]; *Cone* v. *Union Oil Co.* (1954), 129 Cal.App.2d 558, 562 [277 P.2d 464].) Specifically requiring that such evidence be admissible, section 437c of the Code of Civil Procedure provides: "[T]he facts stated . . . [in each affidavit] shall be within the personal knowledge of the affiant . . . and each affidavit shall show affirmatively that the affiant, if sworn as a witness, can testify competently thereto."

▆ Here, however, the major portion of the Lyle affidavit setting out Lyle's request for compensation upon the basis of his grandfather's membership in Hibernia, and Tobin's response, relates to a matter of compromise; such evidence is not admissible. Thus the court in *Yoakam v. Hogan* (1926), 198 Cal. 16, 21 [243 P. 21], states, "if it can be said that the answers tended to show an offer on the part of the defendant to compromise, the evidence would be . . . incompetent. . . ." Nor does the fact that this affidavit pertains to another action against The Hibernia Bank improve the quality of the evidence. ▆ As the court in *Brown* v. *Pacific Electric Ry. Co.* (1947), 79 Cal.App.2d 613, 617 [180 P.2d 424], points out: "*It is contrary to public policy to subject a person who has compromised a claim to the hazard of having his settlement proved in a subsequent lawsuit by another person asserting a cause of action arising out of the same transaction.* To receive such evidence would inevitably tend to discourage settlements out of court if one's purchase of his peace with one person were to be thereafter taken as an admission of his liability for an occurrence which brought injury to another." (Emphasis added.)

Appellants contend that Cyril Tobin's offer of $35,000 reveals this bank officer's belief that the by-laws allowed for the transferability and descendibility of membership. But the argument assumes the admission of evidence which violates the stated public policy and the cited ruling; moreover, in the language of *Brown*, the construction of Hibernia's

by-laws, in essence, constitutes the same "transaction" in the instant cases and in the Lyle transaction.

In this respect appellants' citation of *California Home Extension Assn.* v. *Hilborn* (1951), 37 Cal.2d 459 [235 P.2d 369], does not support their assertion that some offers of compromise are admissible; the case holds only that statements of independent facts may be introduced. In Hilborn's action, grounded upon the theory he had conducted a business in a joint venture with the association, the trial court refused to allow the association to introduce Hilborn's statement that he had been employed at a salary of $200 per month plus expenses and wished to return to work at the same salary. Reversing Hilborn's judgment against the association, the Supreme Court stated: "Although the statements were allegedly made during a conference at which the parties were attempting to compromise their difficulties, that fact does not justify exclusion of the evidence *if it was otherwise admissible.* (*Rose* v. *Rose,* 112 Cal. 341 [44 P. 658]; *Scott* v. *Sciaroni,* 66 Cal.App. 577 [226 P. 827].)" (P. 465; emphasis added.)

Indeed, the two cases cited by the Supreme Court relate to proof of facts involved in the controversy, not concessions made in the course of compromise. The Rose case held admissible in a divorce action the defendant's characterization of certain property as community property even though such designation occurred in an offer of compromise. In so holding the court stated: "The declaration as to the community character of the property was not essential to the purposes of the compromise, and is, therefore, not to be regarded as a concession made for that purpose. While, therefore, it would not be competent to admit an offer of compromise as such, the declaration therein of facts involved in the controversy which are not mere concessions made for the purpose of such offer, but are statements of independent facts, are admissible against the party making them." (P. 344.) In the Scott case the court said: "The admissions here in question were of distinct facts, stated positively and not hypothetically, and therefore admissible in evidence, even though made in the course of an attempted compromise." (Pp. 583-584.)

The Lyle affidavit contains no such independent admissions as are envisaged by these cases. It alleges neither fact nor proof independent of the compromise. And the balance of the affidavit, which relates to Lyle's uncle and his heirs fails to "show affirmatively that affiant . . . can testify

competently. . . ." (Code Civ. Proc., § 437c.) "A witness can testify of those facts only which he knows of his own knowledge. . . ." (Code Civ. Proc., § 1845; 2 Wigmore, Evidence, § 654, p. 757.) Lyle alleges no facts to establish such first-hand knowledge. The affidavit must realistically be viewed as hearsay; it thus fails to create an issue of fact. As *Whaley* v. *Fowler* (1957), 152 Cal.App.2d 379, 382-383 [313 P.2d 97] states: "[T]his affidavit states no facts, merely hearsay and conclusions of law. . . . Said affidavit is of no value in determining whether there were issuable questions of *fact.*"

Appellants finally contend that there "are undoubtedly issues of fact in this case" because an answer, if filed, might project them. They say, "Since the defendants have not filed an answer, the full extent of the issues of fact cannot be determined." ▮ *Doyle* v. *Hibernia Bank* (1957), 156 Cal.App.2d 16, 20 [319 P.2d 412], provides the conclusive resolution of this contention: "In considering a motion for summary judgment the province of the court is issue finding. . . . And the question of issue finding is to be determined by the sufficiency of the affidavits of the parties."

We conclude that appellants have raised no triable issues of fact; we turn to appellants' position and citations as to transferability and descendibility.

▮ The real issue of this appeal must inevitably reduce itself to the question of the validity of the trial court's determination that membership of appellants' predecessors was neither transferable nor descendible. Respondents' affidavits sufficiently sustain this determination. They set forth the 1864 incorporation of Hibernia, the statute pursuant to which it was incorporated, its original by-laws of 1864 and the amendments to such by-laws. Our analysis of these factors, together with our interpretation of *Bennett* v. *Hibernia Bank* (1956), 47 Cal.2d 540 [305 P.2d 20], and *Doyle* v. *Hibernia Bank, supra,* 156 Cal.App.2d 16, is set forth in the opinion we have rendered this day in *Spencer* v. *Hibernia Bank* (1960), *ante,* p. 702 [9 Cal.Rptr. 867]. In that opinion our first and third answers to the appellants' contention that the 1864 by-laws could not sever descendibility from membership in the 1864 Hibernia, which had been acquired by virtue of membership in Hibernia of 1859, particularly relate to the instant cases.

Two additional cases cited by the appellants here on this subject, *Wells* v. *Black* (1897), 117 Cal. 157 [48 P. 1090, 59 Am.St.Rep. 162, 37 L.R.A. 619], and *People* v. *Crockett*

(1858), 9 Cal. 112, do not advance their position. The Wells case does not sustain appellants' claim that the members' consent to the 1864 by-laws was necessary. That case held only that, absent an agreement by the *depositors* of a *stock bank,* a by-law which relieved the stockholders of the double liability imposed by the Constitution did not bind the depositors. The Crockett case, passing upon a situation in which the stockholder owed the corporation money and then assigned his stock to another, held that the corporation could not, by a subsequently enacted by-law, acquire a lien upon the assignee's stock.

 Appellants' further contention that the ''Agreement to Become Members'' itself points to the transferability of membership rests upon the language of the agreement that ''The Undersigned who were members of the Hibernia S & L Socy on the thirty first day of August A.D. 1864 . . . *hereby . . . grant & convey, assign, transfer and set over to''* Hibernia Savings and Loan Society of 1864 *''all our . . . right, title and interest in and to all the property, funds, choses in action, and assetts* [*sic*] *belonging to, or in the possession''* of Hibernia of 1859.

Two answers refute the claim. First, the agreement merely seeks to make the signers thereof assenting members to the acquisition by Hibernia of 1864 of all the assets of Hibernia of 1859 and thus avoid problems involving a member's non-acquiescence; it does not indicate that ''membership'' was transferable. We refer to an analogous situation as to the reorganization of corporations. ''Reorganizations involving a transfer of the corporate property and assets to a new corporation . . . are sometimes effected . . . by the *voluntary* act of the stockholders . . . who form a new corporation to which . . . all the property of the corporation is transferred.'' (15 Fletcher, Cyc. of Corps., § 7216, p. 355; emphasis added.) Second, since the agreement relates to interests in Hibernia of 1859, it cannot establish any transferability of membership in Hibernia of 1864.

Appellants' final contention as to ''conspiracy'' depends upon the validity of their arguments as to transferability and descendibility. A conspiracy, in and of itself, however atrocious, does not produce a cause of action in the absence of the commission of an act resulting in damage to the victim, which, without the conspiracy, would have created the cause of action. (*Agnew* v. *Parks* (1959), 172 Cal.App.2d 756, 762 [343 P.2d 118]; *Orloff* v. *Metropolitan Trust Co.* (1941), 17

Cal.2d 484, 488 [110 P.2d 396].) We have previously pointed out that appellants fail to establish a cause of action based upon the transferability or descendibility of their predecessors' memberships.

We have reached the conclusion that appellants have neither raised any triable issues of fact in their affidavit nor presented any effective attack upon the validity of the trial court's determination that the membership of appellants' predecessors was neither transferable nor descendible.

We affirm the judgments.

Bray, P. J., and Ford, J.,* concurred.

A petition for a rehearing was denied December 27, 1960, and appellants' petition for a hearing by the Supreme Court was denied January 25, 1961. Peters, J., was of the opinion that the petition should be granted.

*Assigned by Chairman of Judicial Council.