[Civ. No. 10610.   Second Appellate District, Division One.—July 6, 1936.]

BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), Respondent, v. JAMES N. CASADY et al., Appellants.

Wier Casady for Appellants.

Edmund Nelson, John E. Walter and Freston & Files for Respondent.

ROTH, J., *pro tem.*—This is an appeal from a summary judgment entered against defendants in response to a motion based on affidavits, pursuant to section 437c of the Code of Civil Procedure. The pleadings and the affidavits, the latter set forth in a bill of exceptions, present the following facts:

Defendants, on June 3, 1931, executed their joint and several promissory note to plaintiff in the sum of $98,500, in lieu of a note in a similar amount theretofore executed by defendant James N. Casady alone, which latter note had been secured by a pledge of 200 shares of stock of Transamerica Corporation and 450 shares of stock of Wilshire National Bank. At the same time and as part of the same transaction, a written agreement (hereinafter referred to as the agreement) was executed by plaintiff and accepted by defendant James N. Casady, which provided that plaintiff was to retain the shares of stock mentioned, and as additional security defendants would execute a junior mortgage

to plaintiff on a parcel of business real estate (hereinafter referred to as aforesaid property), which aforesaid property was already encumbered by a first mortgage theretofore executed by defendants to the Northwestern Mutual Life Insurance Company (hereinafter referred to as company) in the principal sum of $200,000. The agreement further provided:

"That in the event it is necessary for you to borrow additional sums up to a total not exceeding $125,000 to pay interest and taxes on the aforesaid property, we will make you such additional advances from time to time as needed or at our option deliver to you without payment stock of the Wilshire National Bank up to 250 shares which we are now holding as part collateral to your indebtedness."

Pursuant to the agreement, and specifically the above-quoted provision thereof, plaintiff made advances to defendants from time to time for interest and taxes payable upon aforesaid property until July 5, 1933, and advanced money for taxes as late as December, 1933. By reason of these advances the original note was renewed from time to time, and as a consequence of such renewals, a note for $108,000 was finally executed on August 22, 1932. This note was one of those sued upon in the instant action, forming the basis of the first cause of action. On July 7, 1932, an additional note for $4,500 was executed, which, on January 5, 1933, was increased to $6,000, a new note being executed on said date for the latter amount, upon which said note the second cause of action in plaintiff's complaint is predicated. During the process of these advances, and particularly on July 7, 1932, and on January 5, 1933, both defendants executed in favor of plaintiff two several written instruments, the effect of which was to assign to plaintiff rentals accruing from aforesaid property "to provide for taxes and interest on existing liens" on the aforesaid property, and "to provide for the interest on my loan of $108,000 dated April 20, 1932", and "to provide for the interest on my loan of $4500 dated July 7th, 1932", and "as additional security for that certain indebtedness of James N. Casady and Minnie L. Casady . . . " Pursuant to these assignments, plaintiff received the rents therein transferred from the date thereof to April 12, 1934. Interest on the senior encumbrance in favor of the company was due and

payable on the 5th day of January and the 5th day of July of each year, in the amount of $6,000. Plaintiff had advanced money to pay this interest, as well as money to pay taxes, until the interest instalment of July 5, 1933, became due, said advances being those included in the two several notes sued upon. No money was advanced to pay the interest instalment of July 5, 1933, nor was any advanced to pay the interest instalment which became due on January 5, 1934, and neither of said instalments was paid. In the meantime, the principal of the senior encumbrance became due (the exact due date is not made certain, but from proper inference appears to be July 5, 1933). On April 12, 1934, the company instituted a foreclosure action, and obtained a judgment for the full amount of its loan and incidental legal costs and expenses, pursuant to which judgment, the aforesaid property was sold on June 5, 1934, resulting in a small deficiency against the defendants.

Defendants assert that if plaintiff had made advances to the full amount of $125,000, as promised in the excerpted portion of the agreement, that company would not have foreclosed its mortgage. This assertion is apparently corroborated by the affidavit of company's loan agent, who averred therein, " . . . that (company) would not have foreclosed said mortgage had the interest which was due it been paid". Defendants contend that by reason of the failure of plaintiff to advance the interest due on the senior encumbrance on the dates of July 5, 1933, and January 5, 1934, and the consequent foreclosure of the mortgage and the sale of the property covered thereby, that they were damaged to the extent of the difference in the reasonable market value of the parcel sold, and that for which it was actually sold pursuant to the decree of foreclosure, damages approximating $400,000, on the theory that "there may be cases where damages in addition to interest may be recovered for the breach of an obligation to pay money, where it appears that the parties contemplated that the payment was for a certain purpose". (*Baumgarten* v. *Alliance Assur. Co.*, 159 Fed. 275, 277; *Hunt Bros. Co.* v. *San Lorenzo etc. Co.*, 150 Cal. 51, 56 [87 Pac. 1093, 7 L. R. A. (N. S.) 913]; *Hunt* v. *United Bank & Trust Co.*, 210 Cal. 108, 116 [291 Pac. 184].)

Defendants in their affidavit averred that on July 5, 1933, and on January 5, 1934, they made demand upon plaintiff for the money necessary to pay the interest due on the senior encumbrance, advising plaintiff that they had no funds, and that it was necessary for them to obtain further advances, and that since said demands they "have repeatedly requested the plaintiff to loan the said sums", and " . . . plaintiff had not refused to loan the defendants said sums, but had and still has failed to do so".

And further:

"That of the rents received by plaintiff from the premises, hereinbefore described, plaintiff has credited, since on or about February 10th, 1934, and without the consent of defendants, or either of them, and without the knowledge of defendants, or either of them, until this suit was filed, the sum of $4,075 on the principal and the sum of $195.01 on the interest of the note dated August 22, 1932, and the sum of $3,574.11 on the principal of the note dated January 5, 1933."

It is further affirmed by defendants that the reason plaintiff did not advance the interest money was that plaintiff, without the consent and against the wishes of defendants, commenced to negotiate with company for a reduction in the rate of interest and an extension of the loan secured by the senior mortgage, said negotiations commencing on or about July 5, 1933, and continuing until April 12, 1934. In this connection defendants aver that plaintiff "told defendants that it would loan to them the full amount of interest due to The Northwestern Mutual Life Insurance Company if more satisfactory arrangements could not be made, and assured and reassured defendants that it would not permit The Northwestern Mutual Life Insurance Company to foreclose its loan, and on or about December 15th, 1933, told defendants that The Northwestern Mutual Life Insurance Company had made a proposition for reduction of interest and the extension of the loan, and that said proposition was acceptable to plaintiff and that the necessary papers would be forthwith prepared and signed and the sums demanded paid".

Plaintiff's answer to the contention of defendants is that the money which it had promised to loan, pursuant to the excerpted provision of the agreement, was not properly de-

manded. Plaintiff, in its affidavit supporting its motion for summary judgment, made by one R. A. Wright, avers:

"That defendants, nor either of them, have never at any time made demand or request upon the plaintiff for delivery of any of said Wilshire National Bank stock held by plaintiff as collateral; that defendants, nor either of them, have never at any time made demand or request upon plaintiff that plaintiff make an additional loan, or, in the alternative, deliver to defendants 250 shares of said Wilshire National Bank stock, or shares of said stock in any amount."

Plaintiff's point is that defendants' demand for money was not legally sufficient; that defendants should have demanded *money or the stock of Wilshire National Bank up to 250 shares.* It is pertinent at this point to say that the affidavits show that from the time of the execution of the original note on June 3, 1931, to the time money was demanded by defendants for interest on July 5, 1933, defendants' demands *had always been for money and never in the alternative, and the demands had always been complied with.* It is also pertinent at this point to add that the affidavits show that in March, 1933, the Wilshire National Bank was by the comptroller of the currency placed in the hands of a conservator, and that its stock was looked upon as worthless.

It may be conceded at the outset that on a motion for summary judgment the allegations of fact made by defendants in their affidavits must be accepted as true, and that the primary question for the court to decide is whether the affidavits, when so viewed, raise an issue of fact. If an issue of fact is raised, then a summary judgment is improper, and the case must proceed to trial. (*Krieger* v. *Dennie,* 123 Cal. App. (Supp.) 777, 780 [10 Pac. (2d) 820].) If, however, the facts as averred are accepted and create only an issue of law, the court is bound, under the provisions of section 437c, to render a judgment on motion.

On authority, plaintiff is correct in its contention that defendants did not make a proper demand, and that it was therefore under no obligation to advance any funds pursuant to an improper one. (*Dozier* v. *National Borax Co.,* 35 Cal. App. 612 [170 Pac. 638].) In this case the court says, at page 616:

" . . . It was, therefore, incumbent upon the plaintiff to make and aver his demand as broadly as the writing requires; and hence to have alleged a demand upon the defendants for the performance in the alternative by them and each of them of their agreement. The complaint does not allege that plaintiff ever made this demand."

The trial court made an appropriate finding that defendants in this case did not make a proper demand, and since such finding is borne out by the uncontradicted facts, it is decisive. ■ There can be no doubt that a demand for the money was necessary; likewise, it must be admitted that the promise to advance money on demand was a continuing covenant. (*German-American Sav. Bank* v. *Gollmer*, 155 Cal. 683, 688 [102 Pac. 932, 24 L. R. A. (N. S.) 1066]; *McGlynn* v. *Moore*, 25 Cal. 384, 395; *Woodard* v. *Glenwood Lbr. Co.*, 171 Cal. 513 [153 Pac. 951]; *Mulborn* v. *Montezuma Imp. Co.*, 69 Cal. App. 621 [232 Pac. 162]; *Grotheer* v. *Panama-Pacific Land Co.*, 41 Cal. App. 19, 22 [181 Pac. 667]; *Dryden* v. *Board of Pension Commissioners of the City of Los Angeles*, 6 Cal. (2d) 575 [59 Pac. (2d) 104].) The latter proposition being true, the fact that plaintiff had responded to an improper demand at one time did not constitute a waiver of a proper demand at another. (Cases, *supra.*)

In our opinion, however, the decision of this action does not depend solely upon a determination of whether defendants made a sufficient demand. For the purpose of this decision it might be conceded that the demand was sufficient. ■ Broadly stated, the decisive question is: Did the plaintiff break its agreement, even though the demand be conceded as adequate, and if so, did any damage result from such breach which was actionable at the time this action was instituted? In order to determine this question it is necessary to detail a few more facts. Foreclosure sale of the real estate, based on company's senior encumbrance, took place on June 5, 1934. The present action was commenced August 8, 1934. The hearing on the motion for summary judgment was had on May 3, 1935, and judgment was entered pursuant thereto on June 3, 1935. It is apparent from these facts that the instant action was commenced, answer and counterclaim filed therein, and judgment ac-

tually entered, before the equity of redemption residing in defendants had expired, and it does not appear from the affidavits or the pleadings that the right to redeem was not exercised, nor is any showing made that it would not be. On defendants' own theory, their cause of counterclaim for damages for the difference between the price obtained for the real estate on foreclosure sale and its reasonable market value had not accrued at the time the complaint was filed or at the time their answer was filed, nor had it accrued at the time of entry of judgment. (*First Nat. Bank* v. *Perris Irr. Dist.*, 107 Cal. 55 [40 Pac. 45]; *Ohanesian* v. *Galent*, 59 Cal. App. 585 [211 Pac. 238]; *Frank H. Buck Co.* v. *Buck*, 162 Cal. 300, 305 [122 Pac. 466]; *McClendon* v. *Heisinger*, 42 Cal. App. 780, 783 [184 Pac. 52]; 23 Cal. Jur., p. 232 et seq.) So far as the facts show, defendants may have redeemed said real estate, even after the entry of judgment in the present action, and by reason of such redemption suffered no damage.

On the proposition that if sufficient facts are alleged to state a cause of action, irrespective of the theory on which they are stated, a court will grant relief (*Zellner* v. *Wassman*, 184 Cal. 80, 87, 88 [193 Pac. 84]; 21 Cal. Jur. 69), we have scrutinized the facts alleged in the pleadings, as well as those averred in the affidavits, and find nothing upon which to predicate a proper prayer for relief, assuming a breach of the agreement on the part of plaintiff. On defendants' theory of special damages for failure to loan money, the cause of action had not yet accrued, and so far as we know may never accrue. On the theory that defendants suffered the usual nominal damages for failure to loan money, there are no facts alleged in the answer or counterclaim or in the affidavits from which such damage might be found.

It is true that some of the facts and circumstances averred in the affidavits with reference to the promise of plaintiff not to permit a foreclosure of the mortgage have the general complexion of an estoppel. In this connection, the facts show that if plaintiff had used the money collected under the assignments to payment of interest and taxes on company's loan, that it could have advanced the $6,000 due on July 5, 1933, and the $6,000 due on January 5, 1934, without exhausting the limit of its promise to ad-

vance funds, to wit, $125,000. But construing the agreement of the parties in the light of all the circumstances, it would, in our opinion, require a strained construction to hold that the parties contemplated the advance of interest and tax money by plaintiff after the principal of the loan fell due. Nothing is said about this contingency in the agreement, but the obvious purpose of the agreement was to protect the junior lien of plaintiff, as well as to preserve an equity in the real estate for defendants. It could hardly have been contemplated that after defendants failed to pay the principal that plaintiff was nevertheless obligated to pay interest at the time the principal was due. Such action could be of no benefit to the parties here, because, while payment of such interest may have resulted in no deficiency against defendants, or an excess in their favor after foreclosure sale, defendants would be indebted to plaintiff for the exact, or perhaps a greater, amount than would be thus salvaged. Such a construction of the agreement would benefit only company. Company is not a party to this action, and there is no contention that the agreement between the parties here was for the benefit of a third person. Further, none of the features of an estoppel are alleged in the pleadings, nor is there any suggestion in the pleadings that defendants predicate a cause of defense on the theory of estoppel. We are, therefore, of the opinion that the judgment should be affirmed, first, because no proper demand was made; second, because even conceding a breach of agreement on the part of plaintiff, no cause of action had accrued to defendants at the time they filed their counterclaim, and finally, the affidavits show that there is no valid defense to the complaint.

The judgment herein appealed from is affirmed. The notice of appeal herein also specifies an appeal from the minute order upon which the formal judgment is based. Without conceding the right of appeal from such minute order, the minute order appealed from is also affirmed.

Doran, J., concurred.

Houser, P. J., concurred in the judgment.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 31, 1936.