[Civ. No. 17051.  First Dist., Div. One.  Dec. 11, 1957.]

EILEEN DOYLE, as Administratrix With the Will Annexed, etc., Appellant, v. THE HIBERNIA BANK (a Corporation) et al., Respondents.

Alexander S. Keenan, Jr., for Appellant.

C. Ray Robinson, Eugene A. Mash, Richard J. Carew, O'Gara, McGuire & Danielson, Walter McGovern, George Olshausen, M. Mitchell Bourquin, James E. Burns and Joseph A. Kiernan as Amici Curiae on behalf of Appellant.

Tobin & Tobin, Sullivan, Roche, Johnson & Farraher and Brobeck, Phleger & Harrison for Respondents.

BRAY, J.—Plaintiff appeals from a judgment in favor of defendants entered upon their motion for summary judgment in a suit for declaratory relief seeking an interest in the assets of Hibernia Bank by reason of Henry Doyle's membership in the bank's predecessor, the Hibernia Savings and Loan Society.

### QUESTIONS PRESENTED

1. Was there a triable issue of fact?

2. Did Henry Doyle's membership rights terminate with his death?

18

The society, organized in 1859, was intended by its incorporators to be and was operated as a membership corporation. The members were required to sign the by-laws thereby agreeing that their mutual duties, rights and privileges as members should be governed by the by-laws. In 1864 the society elected to become incorporated under laws then existing which provided that associations claiming in good faith to be incorporated under the laws of this state, could incorporate as savings banks without capital stock. The new certificate of incorporation provided that the society should have no capital stock and that its affairs should be managed by a board of directors. September 29, 1864, new by-laws were adopted which provided that all persons who were members of the society on August 29, 1864, should be deemed to be members of the new corporation and that as speedily as possible their signatures to an agreement confirming the new corporation would be procured. A clause as to other persons becoming members similar to the one hereinafter mentioned was included. October 19, 1888, article 4 of the by-laws was amended to read: "The only members of this Corporation are the persons who have signed the agreement hereinafter described [the agreement referred to is the proceedings taken under the Statutes of 1862 and 1864 amendment], and who have kept accounts open with the Corporation since they respectively signed said agreement. Other persons may become members thereof by vote of the Board of Directors, and by signing said agreement, and keeping an open account with the Corporation, but not otherwise. Membership shall not pass with the ownership of moneys deposited with or under the control of the Corporation. Membership ceases when a member once closes his or her account. . . . Any person shall cease to be a member of this Corporation . . . who shall not have continuously and at all times, at least one hundred dollars to his or her credit upon an open deposit account on the books of this Corporation. Membership therein shall continue only so long as such credit shall exist, and shall cease when such credit shall cease to exist. Any pro-

---

[1]See *Bennett* v. *Hibernia Bank*, 47 Cal.2d 540 [305 P.2d 20], for history of the Hibernia Savings and Loan Society (hereafter referred to as the society), and the Hibernia Bank (hereafter referred to as the bank). See also *Maguire* v. *Hibernia S. & L. Soc.*, 23 Cal.2d 719 [146 P.2d 673, 151 A.L.R. 1062]. Only a brief outline of that history need be given here.

visions of any By-law in conflict with this By-law is hereby repealed.''

These by-laws were in effect on January 28, 1889, when Henry Doyle became a member by vote of the board of directors, opening an account by depositing $100 and signing the required agreement. His name was then entered on the books and records and has remained ever since as a member. In 1945 the Legislature added section 29a to the Bank Act (Stats. 1945, p. 1017). It provided that any California corporation without capital stock which continuously for 20 years had been doing business could bring an all persons suit to determine the persons entitled to membership therein, and who had any interest in its property and assets. On October 11, 1945, the society brought such an action. After judgment therein and in 1947 the society reorganized as a stock corporation under the name of Hibernia Bank with stock in the amount of $7,000,000 divided among 15 persons.

Henry Doyle died August 16, 1898, never having resigned or otherwise disposed of his membership. At no time did his account have a balance of less than $100 nor does it now. He left surviving him several heirs. Ever since his death their names have appeared on Hibernia's books as claimants to Henry's membership rights.[2]

### 1. Was There a Triable Issue of Fact?

The answer is no as to the fundamental issue in the case—the question of whether Henry's property rights as a member terminated upon his death,[3] for the reason that nowhere in the affidavits of either party on the motion for summary judgment is there any suggestion of evidence to be offered on the interpretation of the by-laws as to membership. Plaintiff contends that the interpretation of the by-laws on the subject is a question of fact, but she nowhere even intimates that she has any evidence to offer on the subject. Such matters as to which there appears from the affidavits of the parties to be a conflict of evidence are only such matters as arise if as claimed by plaintiff Henry's membership

---

[2] We have not set forth the facts concerning the in rem action above mentioned, the actions of the heirs since Henry's death bearing upon the questions of notice, the statutes of limitation and the other questions raised by the parties in this action. The interpretation given by us to the by-laws renders all these questions moot.

[3] We are not determining whether there are triable issues on such issues raised by defendants as the statute of limitations, or res judicata, as due to our decision on the main issue those issues no longer arise.

rights attached to his heirs upon his death. Whether they did or not is a question of law.

In considering a motion for summary judgment the province of the court is issue finding rather than issue determination. If the court finds a triable issue, then it is powerless to continue but must allow the issue to be tried by a jury, unless a jury trial is waived. (*Walsh* v. *Walsh* (1941), 18 Cal.2d 439, 441 [116 P.2d 62]; *Schulze* v. *Schulze* (1953), 121 Cal.App.2d 75, 81 [262 P.2d 646]; *Eagle Oil & Ref. Co.* v. *Prentice* (1942), 19 Cal.2d 553, 555 [122 P.2d 264].) And the question of issue finding is to be determined by the sufficiency of the affidavits of the parties. (Code Civ. Proc., § 437c; *Dorsey* v. *City of Los Angeles* (1955), 132 Cal.App.2d 716, 719 [282 P.2d 997].) Where on a motion for summary judgment the issues are of law only it is the duty of the trial court to determine those issues. (*Bank of America* v. *Casady* (1936), 15 Cal.App.2d 163, 168 [59 P.2d 444]; see also *Bromberg* v. *Bank of America* (1943), 58 Cal.App.2d 1 [135 P.2d 689] affirming summary judgment where only issues of law were presented.)

*Bennett* v. *Hibernia Bank, supra,* 47 Cal.2d 540, held that under the 1862 act the by-laws could provide the conditions under which membership rights might be acquired or lost. Thus we are required then to determine what the by-laws provided concerning membership rights upon the death of a member.

2. *Termination of Rights.*

The only provision on the subject is in section 4. There is no express statement as to what happens to the property rights attached to membership on the member's death. Whether the by-law is ambiguous or not, we must interpret it without the aid of extrinsic evidence as there is none. We may, however, consider the history of the society and the other provisions of the by-laws in making the interpretation.

In England and on the Atlantic Coast in the early days a common form of savings bank was one in which the depositors were the members and only those who were depositors at the time of liquidation of the bank could have any interest in its reserves. Membership and interest in the bank's assets terminated upon withdrawal of the member's deposits. (See *Society for Savings* v. *Bowers* (1955), 349 U.S. 143 [75 S.Ct. 607, 99 L.Ed. 950].) The act of 1862 contemplated that there could be two kinds of bank corporations, one, a stock cor-

poration, the other a membership corporation. It is significant
that section 299, Civil Code, enacted in 1872 on the adoption
of the codes, provided "If a member of a corporation dies,
resigns or is removed, a majority of the remaining members
may elect another in his place." This was one of the Civil
Code sections which in *Murphy* v. *Pacific Bank,* 119 Cal. 334
[51 P. 317], was held to supersede the act of 1862, except as
to banks then existing. This shows that even as late as 1872
the nondescendibility of membership was recognized. The
Bennett case, *supra,* held that the society, when in 1864 it
filed a certificate of incorporation under the 1862 act, became
a valid membership corporation regardless of what its prior
legal status may have been. It is reasonable to conclude that
the incorporators had in mind the type of savings bank preva-
lent in those days rather than any other. Otherwise they
would have incorporated a stock company. They then pro-
vided in their by-laws that the only members should be of
two classes: (1) persons who were members of the society on
August 29, 1864, and who signed the specified agreement; (2)
other persons elected to membership by vote of the board of
directors. The by-laws then provided that membership would
not pass with the ownership of moneys deposited with or
under control of the corporation. Then came the amendment
of 1888 which again classified membership into two classes:
(1) those who were then members and (2) other persons who
might become members by vote of the board of directors and
who signed the agreement and kept an open account with the
society. This by-law not only had the sentence contained in
the by-laws of 1864 as to membership not passing with a
transfer of the member's account but added the clause that
membership ceased upon the closing of the account. More-
over, it amplified this by providing that membership should
cease if the member did not keep at least $100 in his account.
While there is no express statement of what would happen in
the event of the death of a member, it is clear that his member-
ship thereby terminated and could not pass on to his heirs for
the reason that membership was entirely dependent upon vote
of the directors. Plaintiff concedes this but contends that
although the membership ceases the member's right to a
proportionate share in the reserves and assets continues on.
However, if the member during his lifetime should allow his
account to drop below $100 his right to such share did not
continue on but ceased with his membership. This very fact
shows that a member's right to participate in the reserves and

assets depended upon his being a member at the time they were to be distributed, namely, on dissolution of the corporation. He had no right to receive any portion thereof as long as the corporation continued in existence. This was the holding in connection with a similar bank in *Society for Savings* v. *Bowers* (1955), *supra,* 349 U.S. 143: "The asserted interest of the depositors is in the surplus of the bank, which is primarily a reserve against losses and secondarily a repository of undivided earnings. So long as the bank remains solvent, depositors receive a return on this fund only as an element of the interest paid on their deposits. To maintain their intangible ownership interest, they must maintain their deposits. If a depositor withdraws from the bank, he receives only his deposits and interest. If he continues, his only chance of getting anything more would be in the unlikely event of a solvent liquidation, a possibility that hardly rises to the level of an expectancy. It stretches the imagination very far to attribute any real value to such a remote contingency, and when coupled with the fact that it represents nothing which the depositor can readily transfer, any theoretical value reduces almost to the vanishing point." (P. 150.) See also 9 Corpus Juris Secundum, section 1025, page 1442: "Where a savings bank goes into voluntary liquidation, only those who were depositors at the time when the proceedings were instituted are entitled to share in the surplus." While the member has an interest in the property of the bank incidental to his membership it is not a severable proprietary right to any portion of that property as against the corporation of which he is a member until dissolution and then only if he is still a member. There is nothing in the by-laws which would justify a determination that the rights incident to membership (other than the right to the moneys in the member's account) could be separated from the membership. A rather anomalous situation would result if upon the death of a member his incidental rights would continue and pass to his heirs even though admittedly his membership could not pass. His proportionate interest in the reserves and assets incidental to his membership could not then be carved out and distributed. If his property interest passed we would have a situation where the reserves and assets were owned by members plus persons not members but who would have to await such time as the members might decide to dissolve the corporation. What a confusing situation!

The Act of 1862 (Stats. 1862, ch. 187, p. 200) prescribed

that the by-laws could provide "the time and manner in which any person may become, or cease to be, a member of the corporation. . . ." It would be a rather distorted interpretation to hold that in providing that except as to the then existing members, "other persons" could only become members by vote of the board of directors the by-laws meant any other person than heirs of a member. Likewise it would be a similar distortion to hold that although not members such heirs would have all the rights of members.

In the Bennett case the Supreme Court apparently interpreted the by-laws as preventing transfer of membership property rights for referring to that portion of the by-laws adopted in 1868 which provided "No one shall be deemed a member whose account is once closed," the court said (p. 552): "Since this by-law was adopted after Curtin became a member it would not be enforceable against him, in the absence of his consent, *if it would unreasonably deprive him of his membership rights.*" (Emphasis added.)

The deposit of a member created a debtor-creditor relationship between him and the society as respects the amount of the deposit (see *Rubino* v. *Utah Canning Co.*, 123 Cal.App. 2d 18, 23 [266 P.2d 163]—*ownership* of the moneys on deposit on the member's death would pass to the heirs or legatees subject to administration (see Prob. Code, § 300)). Thus on Doyle's death the ownership of the deposit was transferred but as provided in article 4 "Membership" with all the rights attendant thereon "shall not pass." The right to the deposit moneys was different from the right to a proportionate share in the assets of one who was a member at the time of distribution of those assets. The former stemmed from the debtor-creditor relationship which relationship passed to his heirs. The latter stemmed from membership which could not pass to his heirs.

Plaintiff seems to interpret the word "credit" in the 1888 amendment to article 4 of the by-laws as referring to a member's interest in the assets and reserves of the bank as well as to his deposit account. This overlooks the wording of the by-law which expressly limits credit "to his . . . credit *upon an open deposit account* on the books of this Corporation." (Emphasis added.) The rights incident to membership do not, would not, appear upon a *deposit account.*

The Bennett case, *supra,* dealt with the situation of a person to whom a member of the society who joined it in 1860 and prior to the adoption of any of the by-laws under discussion

here had purported to assign his interest in the assets of the society. The complaint alleged that as such successors of the member the plaintiff was entitled to a proportionate share in the reserves and assets of the society. A demurrer to the complaint was sustained by the trial court without leave to amend on the theory that as a matter of law the by-laws provided that the member's interest in the assets and reserves could not be transferred, and therefore the complaint did not state a cause of action. In reversing the trial court the Supreme Court referring to article 4 of the 1864 by-laws, stated that its "language might be construed, as defendants urge, to mean that there could be no transfer of the rights of any member without action by the directors. On the other hand, it might be interpreted as governing only the rights of those who might join the corporation after adoption of the by-law and as providing that such persons, upon becoming members, would acquire only nontransferable membership rights. We cannot hold that the by-law must as a matter of law be construed in the manner urged by defendants, and, if this case goes to trial, the parties should be entitled to produce extrinsic evidence in support of their respective interpretations." (P. 552.)

The Bennett case dealt only with memberships existing prior to 1864 but pointed out that the by-laws might be interpreted as providing that persons thereafter becoming members acquired only nontransferable rights. Whether the Supreme Court intended that as to this class of members extrinsic evidence might be used to interpret the meaning of the by-laws is immaterial here, because on the motion for summary judgment no showing was made that any such evidence is available.[4]

In view of our interpretation of the by-laws we deem it unnecessary to relate the history of the case subsequent to Doyle's death, nor discuss such questions as to whether there were triable issues of fact raised concerning such issues as the statutes of limitation, res judicata, and the other defenses alleged by defendants. That history would be important and

---

[4]An additional question not present in our case was the effect of the member who joined in 1860 signing the agreement required by the amendment of 1864. The court held that whether thereby the member was consenting only to the reorganization of the society under the 1862 act as amended in 1864 or was referring to subsequent steps taken by the new corporation such as the adoption of by-laws was a question which could not be resolved on demurrer.

those issues triable only if the rights and incidents of Doyle's membership were descendible.

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 5, 1958. Carter, J., was of the opinion that the petition should be granted.