756

[Civ. No. 18695.   First Dist., Div. One.   Nov. 28, 1960.]

ANITA M. JACOB, Appellant, v. THE HIBERNIA BANK (a Corporation) et al., Respondents.

[Civ. No. 18777.   First Dist., Div. One.   Nov. 28, 1960.]

LITTLE SISTERS OF THE POOR OF OAKLAND, CALIFORNIA (a Corporation), Appellant, v. THE HIBERNIA BANK (a Corporation) et al., Respondents.

[Civ. No. 18778.   First Dist., Div. One.   Nov. 28, 1960.]

WILLIAM LYLE et al., Appellants, v. THE HIBERNIA BANK (a Corporation) et al., Respondents.

[Civ. No. 18779.   First Dist., Div. One.   Nov. 28, 1960.]

INEZ SPENCE WOOD, Appellant, v. THE HIBERNIA BANK (a Corporation) et al., Respondents.

C. Ray Robinson, Eugene A. Mash, O'Gara, McGuire & Danielson and Walter McGovern for Appellants.

· Tobin & Tobin, Sullivan, Roche, Johnson & Farraher and Brobeck, Phleger & Harrison for Respondents.

TOBRINER, J.—In our opinion in *Spencer* v. *Hibernia Bank* (1960), *ante*, p. 702 [9 Cal.Rptr. 867] filed this day we have discussed the determinative considerations which resolve these cases. We describe here the various factual differences and procedural postures of the instant cases, but these do not affect the result.

This opinion encompasses the appeals in four cases, *Jacob* v. *Hibernia Bank*, *Little Sisters* v. *Hibernia Bank*, *Lyle* v. *Hibernia Bank*, and *Wood* v. *Hibernia Bank*. These cases are companions to the Burke and Theobald cases which we have likewise decided this day. (*Burke* v. *Hibernia Bank* (1960), *ante*, p. 739 [9 Cal.Rptr. 890].) We have followed appellants' briefing of the first four cases in one group although respondents have consolidated all six cases in one brief.

These four declaratory relief actions arise from the same general background as the Burke and Theobald cases, and like those actions, seek to establish claims to ownership in The Hibernia Bank based primarily on alleged membership derived from ancestors who were assertedly members. Respondents are the same parties in all six cases; appellants vary from case to case.

We have set forth the basic history of Hibernia in *Spencer*; we shall present here the nature of the proceedings and the judgments in the four instant cases and, thereafter, the addi-

tional facts in each case to determine their impact, if any, upon the result.

The unverified complaints in each of these four cases set forth four counts. Counts one and three rest upon the same basic predicates. Count one of each complaint alleges that pursuant to section 29a of the Bank Act, Hibernia, on October 11, 1945, filed in the Superior Court, in and for the City and County of San Francisco, a "Complaint to Determine the Persons Who Are Entitled to Membership in Plaintiff Corporation, or Who Have Any Right or Interest in the Property or Assets Thereof," and in 1946 obtained a judgment declaring that specified parties were so entitled but not including among them appellants or their ancestors. The complaints allege that appellants are members of Hibernia on the basis of descent or inheritance and seek to set aside the above-mentioned judgments upon the ground that they were procured by fraud. Subsidiary allegations in count one relate to an asserted unconstitutionality of section 29a of the Bank Act under both the federal and California Constitutions and the invalidity as a matter of law of the by-laws under which appellants have been deemed to have no interest in Hibernia. Appellants also challenge the validity of the 1947 reconversion of Hibernia into a stock corporation. Appellants conclude this cause with allegations that the claims of appellants and respondents conflict and that "it is necessary and proper that . . . [certain] written instruments, contracts and judgment be construed and that a declaration of the rights and duties of the respective parties be made." The gravamen of count three lies in an alleged conspiracy to defraud appellants as charged in count one.

Counts two and four rest on the same hypothesis. Count two of each complaint alleges that the ancestor was a depositor in Hibernia and that, as such, possessed the same rights in the assets as a member. These counts do not allege that the ancestor was such a member. Count four, like count three, rests upon allegations of a conspiracy to deprive appellants, as successors of such depositors, of their rights as such.

Respondents filed motions for summary judgments, supported by an affidavit of Cyril R. Tobin in all of the cases except the Jacob case in which Richard Raoul-Duval, another officer and director of Hibernia, executed the affidavit. Appellants filed affidavits of Werner J. Ebstein and William Lyle, which we discuss *infra*. Respondents filed an objection

to the Lyle affidavit and a "Supplemental Affidavit of Cyril R. Tobin." In each of the cases the court granted respondents a summary judgment upon the ground that no triable issue of fact arose and that respondents were entitled to a judgment in each case as a matter of law on the pleadings and the undisputed facts.

We dispose preliminarily of certain problems common to all of the cases. We have noted that the second and fourth counts of the complaints rest upon the exclusive fact of depositorship of each appellant's ancestor. The summary judgments hold that "no depositor of defendant bank ever, by virtue of being a depositor, had any rights similar to rights of membership or any right or interest in defendant's bank property . . . other than that of a creditor to the payment of the credit balance in his or her deposit account. . . ." We have pointed out in *Carew* (*Carew* v. *Hibernia Bank* (1960), *post*, p. 764 [9 Cal.Rptr. 905]), that mere depositorship would not suffice as a basis for the claim in *Carew* but in any event here we find no serious contention proffered in appellants' briefs on this score.

We have noted, too, the allegations as to conspiracy in appellants' complaints. We do not believe that these allegations inure to the advantage of appellants in the absence of a showing of a cause of action which would arise without the conspiracy. ██ The cases have long held that "a conspiracy, in and of itself, however atrocious, does not give rise to a cause of action unless a civil wrong has been committed resulting in damage. . . ." ██ The facts must be such that "something was done which, without the conspiracy, would give rise to a right of action. . . ." (*Agnew* v. *Parks* (1959), 172 Cal.App.2d 756, 762 [343 P.2d 118]. To the same effect see *Herron* v. *Hughes* (1864), 25 Cal. 555; *Dowdell* v. *Carpy* (1900), 129 Cal. 168, 171 [61 P. 948]; *Moropoulos* v. *C. H. & O. B. Fuller Co.* (1921), 186 Cal. 679, 683 [200 P. 601].)

We have noted, finally, the allegations in the complaint as to section 29a of the Bank Act and the prior proceeding of "*The Hibernia Savings and Loan Society* vs. *Richard M. Tobin, et al.*," (San Francisco Superior Court No. 345334). We point out here, as we did in *Spencer*, that we find it unnecessary to discuss this issue because it arises only if appellants could present a meritorious case as to membership. (*Bennett* v. *Hibernia Bank* (1956), 47 Cal.2d 540 [305 P.2d 20].) Since appellants fail in that basic presentation the

issue of fraud in this respect does not arise. For the same reason we find no need to consider the allegations as to the unconstitutionality of section 29a of the Bank Act.

We proceed to discuss *seriatim* the particular cases in their legal setting.

### The Jacob Claim

Jacob's ancestor, John McHugh, opened an account with Hibernia Savings and Loan Society in 1859 by the deposit of $5.00 and closed his account on December 28, 1866, by withdrawing his entire credit balance. The certificate of incorporation of Hibernia of 1859 includes his signature as one of the original incorporators and trustees of that corporation. As a trustee he seconded the resolution of Gustave Touchard that Hibernia of 1859 "avail itself of the provisions" of the Acts of 1862 and 1864 to incorporate as a membership organization. In exhibit "A" to the certificate of incorporation of August 29, 1864, he was named as one of the 11 directors "who shall manage the affairs of the said Corporation during the first six months of its existence. . . ." He signed the "Agreement to Become Members" of Hibernia of 1864. McHugh died in 1909 leaving Jacob as his "heir, legatee or devisee. . . ."

McHugh closed his account in 1866. The analysis set forth in the discussion of the problem of depositorship in *Spencer* applies here. In *Spencer* we analyzed Hibernia of 1864 as "structured upon the concept of the member-depositor," and discussed the validity of article 4 of the 1864 by-laws, as amended on February 10, 1868, as to termination of membership predicated upon a closed account. The rationale of such analyses and discussion finds equal applicability here. Therefore, as the trial court expressly held, McHugh's membership terminated upon the closing of this account in 1866.

Moreover, McHugh's alleged rights did not descend to Jacob. Here, as in the other three cases under discussion, appellant offers no extrinsic evidence to raise a triable issue of fact on this question; and in the absence of it the ruling of the trial court stands. Our first and third answers to the contention that the 1864 by-law could not sever descendibility set forth in *Spencer* apply in the instant case to support the conclusion that McHugh's claimed rights could not descend to Jacob.

McHugh's termination of depositorship and the lack of descendibility of his alleged rights dispose of the Jacob claim.

### The Little Sisters Claim

Appellants contend that their predecessor, Gustave Touchard, made the motion, seconded by McHugh, that Hibernia of 1859 "avail itself of the provisions" of the acts of 1862 and 1864 to incorporate as a membership organization and that he was named in the certificate of incorporation of August 29, 1864, as one of the 11 directors "who shall manage the affairs of the said Corporation during the first six months of its existence. . . ." Touchard signed the "Agreement to Become Members." Respondents admit that Touchard was a member of Hibernia. His account was closed on August 1, 1888, by the withdrawal of the entire credit balance by payment to the executors of his last will and testament.

Respondents correctly contend that the complaint alleges that Touchard became a member of Hibernia in 1871, and that appellants have changed their position in presently assuming that Touchard was a member of the 1859 Hibernia. Since respondents have treated the case upon the basis that appellants' predecessor is the same Touchard who was a member of the 1859 Hibernia, we do so here.

The same considerations which we set out as to the Jacob claim apply here. Both parties proceed upon the assumption that the ancestor was a member of Hibernia of 1859 and on that basis became a member of Hibernia of 1864. The termination of depositorship and the lack of descendibility is therefore fatal to this claim.

### The Lyle Claim

The ancestor here, James R. Kelly, was elected a member of Hibernia on January 18, 1886, and signed the "Agreement to Become Members," having opened an account with Hibernia on January 16, 1886. Kelly died September 28, 1912. Upon withdrawal of the credit balance by Alf R. Kelly, as executor of the last will and testament of James R. Kelly, the account was closed on April 24, 1918.

The affidavit of appellant William Lyle alleges the following facts: Hibernia paid an amount which he believes exceeded $100,000 to the heirs of his uncle, Alf R. Kelly, the son of James R. Kelly, who had also been a member of Hibernia, for his membership rights. Some time after such payment, Lyle requested Cyril R. Tobin to pay to him his share of his grandfather's interest in Hibernia. Tobin offered him $35,000. Lyle made no reply. Tobin thereupon told Lyle that he had no interest, or right to any interest in Hibernia, and that Lyle could rely upon that statement. Appellants likewise

state that Tobin's supplemental affidavit does not deny the truth of these statements in Lyle's affidavit.

The Lyle claim, which is actually composed of the claims of six individual claimants, but which we treat here under the single heading, cannot surmount the lack of descendibility of the predecessor's membership or the closing of the account in 1918.

Since Kelly became a member by election after the enactment of the amendment in 1868 to article 4 of the by-laws of 1864, his status parallels that of the predecessor in *Doyle,* and the ruling in that case applies. Appellants raise no triable issue of fact by the introduction of extrinsic evidence, and the pure question of law, which therefore emerges, finds a complete resolution in *Doyle.* Membership acquired after the adoption of by-laws, which provided that "membership was entirely dependent upon vote of the directors," "could not pass on to his heirs. . . ." (*Doyle* v. *Hibernia Bank* (1957), 156 Cal.App.2d 16, 21 [319 P.2d 412].)

Moreover, the executor's withdrawal of Kelly's deposit in 1918 is fatal to the claim. Kelly did not become a member until 1886. Some 12 years prior to that date, in 1874, the by-laws had been amended to provide, "Membership ceases when a member once closes his or her account." Admitting the validity and application of the by-law to Kelly, appellants would avoid it upon the ground that Kelly did not close the account but that it terminated after his death. Even assuming this tenuous construction, Kelly's membership, if it survived and descended to his heirs, terminated upon the closing of the account in 1918. Appellants' argument that "membership" did not thus pass, but only the "property rights of their ancestor," incident to "membership," meets its complete nemesis in *Doyle.*

In view of the above discussion, an analysis of respondents' suggested additional defense of the statute of limitations becomes unnecessary.

Appellants' contention that the affidavit of William Lyle supplies "evidence of . . . interpretation" of article 4 of the by-laws of 1864, and that such interpretation constitutes "extrinsic evidence" which distinguishes *Doyle* has been discussed and disposed of in the opinion in *Burke* v. *Hibernia Bank, ante,* p. 739 [9 Cal.Rptr. 890] filed this day.

### The Wood Claim

The predecessor here is John Sullivan. A John Sullivan is named in the certificate of incorporation of Hibernia

of 1859 as one of the original trustees and incorporators. The certificate of incorporation of August 29, 1864, likewise names him as one of the "directors" who shall manage the affairs of said corporation during the first six months of its existence. The affidavit of Cyril R. Tobin states that "There was a man named John Sullivan who was elected a member of Hibernia by its Board of Directors on February 26, 1867 and signed the 'Agreement to Become Members.' " Sullivan died on July 28, 1882. The credit balance in his account was paid on February 9, 1928, to Sullivan Estate Company as assignee of the distributees under the decree of distribution in that estate.

While the complaint alleges that John Sullivan became a depositor on or about January 17, 1871, respondents deny this allegation. Appellants treat the situation on the basis that Sullivan was a member in Hibernia of 1859; and, although respondents argue that "nothing in the record" supports the assertion that the Sullivan named in the certificate of incorporation "is the Sullivan named in the complaint" they make that assumption for the purpose of argument.

Our analysis in the Jacob and Little Sisters cases becomes pertinent and the claim is disposed of because of the reasons there stated.

We affirm the judgment in each of the above-entitled cases.

Bray, P. J., and Ford, J.,* concurred.

A petition for a rehearing was denied December 27, 1960, and appellants' petition for a hearing by the Supreme Court was denied January 27, 1961. Peters, J., was of the opinion that the petition should be granted.

---

*Assigned by Chairman of Judicial Council.