[Civ. No. 26101. Second Dist., Div. One. July 30, 1962.]

BARRY BERK, Plaintiff and Appellant, v. LARRY ALPERIN, Defendant and Respondent.

Albert A. Dorn for Plaintiff and Appellant.

Dolman & Isaac and Godfrey Isaac for Defendant and Respondent.

FOURT, J.—This is an appeal from a summary judgment (Code Civ. Proc., § 437c) entered on September 19, 1961, adjudging that ". . . said defendant LARRY ALPERIN have judgment against plaintiff, together with his costs and disbursements herein taxed at $13.00."

A résumé of the facts is as follows:

On March 20, 1961, plaintiff filed a verified complaint for work, labor and services, money had and received, and

an account stated. It was alleged in the first cause of action, among other things, that the individually named defendants did business under the fictitious firm name and style of Dynacal Manufacturing Co. and concluded with the charging allegation that, "Within two years last past at Los Angeles, California, defendants became indebted to plaintiff in the agreed sum of Five Thousand, Eighteen Dollars and Eighty-six Cents ($5, 018.86) on account of work, labor and services performed by plaintiff at defendants' special instance and request. No part of said sum has been paid."

The second cause of action incorporated by reference certain allegations set forth in the first cause of action and then charged that ". . . plaintiff rendered services to and purchased material on behalf of defendants. Such services were so rendered and performed and such materials were purchased at the special instance and request of defendants, and defendants then and there promised to pay plaintiff the reasonable value of such services and materials." It was further alleged that the reasonable value of the above was $5,018.86 and that no part of said sum has been paid.

The third cause of action also incorporated by reference certain allegations set forth in the first cause of action and then charged that ". . . defendants became indebted to plaintiff in the sum of . . . $5,018.86 for money had and received by defendants for the use and benefit of plaintiff" and that "On or about February 28, 1961 and before the commencement of this action, plaintiff demanded payment thereof from defendants. No part of said sum has been paid."

Finally, the fourth cause of action, which also incorporated by reference certain prior allegations, charged that ". . . an account was stated by and between plaintiff and defendants wherein and whereby it was agreed that defendants were indebted to plaintiff in the sum of . . . $5,018.86" and that "No part of said sum has been paid. . . ."

On June 1, 1961, defendant Larry Alperin, sued as Larry Alperin, individually and doing business as Dynacal Manufacturing Co., severed himself from all other defendants and filed his answer to the complaint.

In addition to the denials set forth therein defendant alleged a separate first affirmative defense as follows:

"I

". . . defendant denies that he ever, at any time, did business as DYNACAL MANUFACTURING Co., and further denies that he is now or was at any time responsible for the obliga-

tion, if any, of DYNACAL MANUFACTURING Co., to plaintiff or any other person or persons.

"II

"That at all times mentioned in the complaint, the plaintiff dealt with Dynaland Developers, Inc., a California corporation, who do business under the fictitious name of Dynacal Manufacturing Co., and that answering defendant is neither an officer, director nor employee of the said corporation."

In addition to the above set forth answer defendant also filed a notice of motion for an order for summary judgment and points and authorities and an affidavit of David L. Swartz and declaration of Larry Alperin in support of such motion for summary judgment. The declaration of defendant Alperin provides in pertinent part as follows:

"1. . . . . . . . . . . .

"2. He has never had any ownership interest in DYNALAND DEVELOPERS, INC., DYNACAL MANUFACTURING COMPANY, any business owned by DAVID L. SWARTZ or any other person or entity owning all or any part of a product known and described as 'MAGIC FOTO KIT' or any part thereof or by any name.

"3. The original owner of such product and its component parts was one GEORGE LUCK, who, on or about September 9, 1960, entered into an agreement with DAVID L. SWARTZ to form a corporation 'to manufacture and sell the product . . .' and subsequently, GEORGE LUCK transferred to DAVID L. SWARTZ his remaining interest except for Fifteen (15%) percent of the profit from the first Two Hundred Thousand (200,000) packages produced and sold and Twenty (20%) percent thereafter, which he reserved to himself.

"4. On or about October 26, 1960, a California corporation by the name of DYNALAND DEVELOPERS, INC., ratified and approved the entering into such business and purchase of the rights to said product by the Corporation and made such the business of the corporation, and subsequently published Certificate of Doing Business Under the Fictitious Name of DYNACAL MANUFACTURING Co., on or about November 18, 1960.

"5. Declarant LARRY ALPERIN has never at any time, directly or indirectly, or in any manner whatsoever owned any shares of stock in DYNALAND DEVELOPERS, INC., or DYNACAL MANUFACTURING Co., or been an officer, director, or employee of such concern.

"6. BARRY BERK, plaintiff herein, was in November of

1960 and is now doing business under the fictitious firm name of BARRY SALES AND DISTRIBUTING Co., INC., and all dealings of DYNACAL MANUFACTURING Co., with him have been with the said BARRY BERK and one STANLEY SIMMONS, who do business under the fictitious firm · name of BARRY SALES AND DISTRIBUTING Co., INC.

"7. The two parties to any transactions herein mentioned and to any and all transactions relating to the said 'MAGIC FOTO KIT' were BARRY SALES AND DISTRIBUTING Co., INC., on the one hand, and DYNACAL MANUFACTURING Co., sometimes referred to as DYNACAL CORP., on the other. It was continuously recognized by all parties that LARRY ALPERIN was not a party to the negotiations or transactions, but had lent certain monies to DYNACAL MANUFACTURING Co., and DAVID L. SWARTZ and in illustration of all of these points, a letter of January 20, 1960 [sic] is marked Exhibit A, attached hereto, and made a part hereof as if at this point set forth verbatim.[1]

"8. By letter agreement of October 24, 1960 between DYNACAL MANUFACTURING Co., and LARRY ALPERIN, LARRY ALPERIN agreed to advance to DYNACAL MANUFACTURING Co., up to Three Thousand Dollars ($3,000.00) representing monies needed for DYNACAL MANUFACTURING Co., to continue its operation. In return, DYNACAL . . . agreed to pay to declarant all of the monies received by it from the sale of the first Thirty-Six Thousand (36,000) 'MAGIC FOTO KITS,' and a sum equal to Twelve Cents (12¢) per kit sold for a period of Ten (10) years. DAVID L. SWARTZ personally guaranteed the performance of each and every act and payment required of it by the letter agreement of DYNACAL MANUFACTURING ·COMPANY. Declarant had no other or different interest of any sort, nature or description in the 'MAGIC FOTO KIT.' In addition, the guarantor, DAVID L. SWARTZ, assigned certain rights he

---

[1]The letter marked as Exhibit "A" is substantially as follows:
"barry sales and distributing co., inc.
"January 20, 1961
"Dynacal Corp. .
1617 El Centro
Hollywood 28, Calif.
"Gentlemen:
"We have been notified that 10,000 of the printing masks have been die cut incorrectly. We will not accept delivery of any of the units where the masks will be used.
"Cordially yours,
"Stanley Simmons
"SS:sk
"cc: Larry Alpern [sic]
Robert Nachman".

had in monies due him from parties in Orange County, California."

The affidavit of David L. Swartz provides in pertinent part as follows:

"1. That DYNALAND DEVELOPERS, INC., is a California corporation . . . doing business under the name DYNACAL MANUFACTURING COMPANY.

"2. That publication of the Certificate of Doing Business Under a Fictitious Name has been made in both Los Angeles County and Orange County. . . .

"3. That at no time has DYNACAL MANUFACTURING COMPANY done business with reference to any photographic kits under any name whatsoever, or any other business except in its corporate form.

"4. That the Board of Directors of said corporation consists of DAVID L. SWARTZ, ROSE SWARTZ and SALLY KRAVITSKY.

"5. That LARRY ALPERIN is not now, nor has he ever been, an officer, director or shareholder of DYNALAND DEVELOPERS, INC., or any corporation in which affiant has an interest.

"6. That affiant, as an officer and director of DYNALAND DEVELOPERS, INC., dba DYNACAL MANUFACTURING COMPANY, has had business dealings with said LARRY ALPERIN, but in none of them has LARRY ALPERIN ever asserted, been granted or held out to have any ownership interest.

"7. That attached hereto and made a part hereof is a photostatic copy of a two-page 'Minutes of Special Meeting' of DYNALAND DEVELOPERS, INC., . . .[2] relating to the business of

---

[2]The above-mentioned minutes provide in pertinent part as follows:

"

"There were present DAVID L. SWARTZ and ROSE SWARTZ, being all of the directors of the corporation [i.e. Dynaland Developers, Inc.]..

"

"The President then announced that there was a vacancy on the Board of Directors and that said vacancy should be filled.

". . . By unanimous vote, SALLY KRAVITSKY was elected a Director of the corporation.

"

"The President then announced that the corporation had the opportunity to manufacture and sell a liquid which when applied to paper would reproduce a picture from a negative exposed to light ..,

"On motion duly made, seconded and unanimously carried, the following resolution was adopted:

"WHEREAS, the President of the corporation has entered upon negotiations so that the corporation may acquire the right to manufacture and sell a liquid which when applied to paper would reproduce a picture from a negative exposed to light, and

"WHEREAS, it is deemed to be to the best interests of the corporation to enter into such venture.

"Now, THEREFORE, BE IT RESOLVED: That the actions of the Presi-

manufacturing and selling a liquid which when applied to paper, would reproduce a picture from a negative exposed to light.''

On June 15, 1961, the declaration of plaintiff Barry Berk in opposition to defendant Larry Alperin's motion for summary judgment was filed. It was therein declared as follows:

''1. That the plaintiff's claim in the above action is based upon services performed, materials purchased and money paid to third parties on behalf of and at the request of the defendant LARRY ALPERIN.

''2. On many different occasions shortly before and during the time that plaintiff was rendering the services, purchasing the materials and paying money to third parties as set forth above, defendant LARRY ALPERIN stated to him that he, LARRY ALPERIN, was and would be responsible for the charges of plaintiff; that he, LARRY ALPERIN, was DYNACAL, and that the business which was being done between plaintiff and DYNACAL was being done for him, LARRY ALPERIN.

''3. So far as plaintiff was concerned, he relied upon the representations of said defendant LARRY ALPERIN in doing what he did insofar as DYNACAL was concerned.''

On June 26, 1961, plaintiff filed an additional declaration of plaintiff in opposition to the motion for summary judgment and declared the following in pertinent part:

''I

''The plaintiff's claim . . . is based upon services performed for and at the specific request of defendant, LARRY ALPERIN, and for materials purchased in connection with the services performed, and for $600, which plaintiff paid to an artist

---

dent in negotiating and entering upon the venture of manufacturing and selling the liquid . . . is hereby ratified and approved, and hence forward shall be a business of the corporation.

''In order to authorize the corporation to file a Certificate of Business under a Fictitious Name, under which name the new venture of the corporation would be carried, on motion duly made, seconded and unanimously carried, the following resolution was adopted.

''RESOLVED: that the President and the Secretary of the corporation be, and they are hereby authorized and directed to file a Certificate of Business under the Fictitious Firm Name of DYNACAL MANUFACTURING Co.

''.　　•　　•　　•　　•　　•　　•　　•　　•

''s/s Rose Swartz

''ROSE SWARTZ, Secretary

''ATTEST:
s/s David L. Swartz

''DAVID L. SWARTZ, President

''SALLY KRAVITSKY, Vice-President-Treasurer''

for art work in connection with said services performed and at the specific request of defendant, LARRY ALPERIN.

## "II

"In connection with said services, materials, and monies advanced, plaintiff dealt directly with LARRY ALPERIN. The said services, materials, and monies advanced were directly and specifically requested by LARRY ALPERIN on his behalf, at which time he promised to pay for the same.

## "III

"During the period that plaintiff was rendering services, etc., as set forth herein above, LARRY ALPERIN specifically represented that he was a principal in DYNACAL, and that DYNACAL was his business.

## "IV

"Plaintiff . . . is not suing defendant, LARRY ALPERIN, as a guarantor, but on the basis that LARRY ALPERIN is primarily and directly responsible for the amount sued upon because the services, materials, and monies advanced were rendered directly to him at his request and for his personal benefit; and for which services and so forth he specifically agreed to pay; that plaintiff does not take the position that the claim is now based upon a promise to pay the obligation of a third party, but that the promise to pay by LARRY ALPERIN was as to his own obligation.

## "V

"If the Court feels that plaintiff has not adequately stated cause of action in the complaint in view of the affidavit filed in connection with the defendant, LARRY ALPERIN's, motion for Summary Judgment, then in that event, the plaintiff respectfully requests permission and an opportunity to file for leave to file an amended complaint.

## "VI

"All of the facts stated here and above are within the personal knowledge of your declarant; that your declarant personally carried on the negotiations and conversations with LARRY ALPERIN which culminated in the plaintiff's doing the work and furnishing the materials and advancing the funds to an artist as set forth here and above.''

The minute order dated July 5, 1961, and entered July 7, 1961, indicates that the "Motion of defendant Larry Alperin for order dismissing the complaint with prejudice and for summary judgment in favor of defendant" was granted.

It is stated in *People* ex rel. *Mosk* v. *City of Santa Barbara*, 192 Cal.App.2d 342 [13 Cal.Rptr. 423] at pages 349-350 that:

"[2] The function of the trial court in considering a motion for summary judgment is to determine whether there exists a triable issue of fact. (*McHugh* v. *Howard,* 165 Cal.App.2d 169 [331 P.2d 674]; *Dawson* v. *Rash*, 160 Cal.App.2d 154 [324 P.2d 959]; *Doyle* v. *Hibernia Bank,* 156 Cal.App.2d 16 [319 P.2d 412]; *Enos* v. *Foster*, 155 Cal.App.2d 152 [317 P.2d 670].) [3] Whether a triable issue of fact exists is determined by the sufficiency of the affidavits of the parties. (*Doyle* v. *Hibernia Bank, supra*; Code Civ. Proc., § 437c; *Dorsey* v. *City of Los Angeles*, 132 Cal.App.2d 716 [282 P.2d 997].) [4] Where the affidavits do not present any triable issue of fact, then the problem is resolved into a question of law and the trial court determines the issues of law. (*Bank of America* v. *Casady*, 15 Cal.App.2d 163 [59 P.2d 444]; *Bromberg* v. *Bank of America*, 58 Cal.App.2d 1 [135 P.2d 689]; affirming summary judgment where solely issues of law were presented.)

"[5] As stated in *Eagle Oil & Refining Co.* v. *Prentice*, 19 Cal.2d 553 [122 P.2d 264] at page 556:

" 'Because the procedure is summary and presented on affidavits without the benefit of cross-examination, a trial by jury and opportunity to observe the demeanor of witnesses in giving their testimony, the affidavits filed on behalf of the defendant [i.e., plaintiff in the case at bar] should be liberally construed to the end that he will not be summarily deprived of the full hearing available at a trial of the action and the rights incident thereto.

"[6] 'The procedure is drastic and should be used with caution in order that it may not become a substitute for existing methods in the determination of issues of fact. [Citation.]

"[7] 'For these reasons it may further be said that the affidavits of the moving party . . . [defendant in the case at bar] should be strictly construed and those of his opponent liberally construed. [Citations.] [8] And in this connection it may be further observed that the better rule is that the facts alleged in the affidavits of the party against whom the motion is made must be accepted as true, and that such affidavits to be sufficient need not necessarily be composed wholly of strictly evidentiary facts. [Citation.]'

"It is, of course, fundamental that the granting of a

summary judgment where a triable issue of fact or defense is shown constitutes reversible error. (*Travelers Indemnity Co.* v. *McIntosh*, 112 Cal.App.2d 177 [245 P.2d 1065]; *Rall* v. *Lovell*, 105 Cal.App.2d 507 [233 P.2d 681]; *Weichman* v. *Vetri*, 100 Cal.App.2d 177 [223 P.2d 288]; *Gillespie* v. *Hagan*, 94 Cal.App.2d 566 [211 P.2d 9]; *United States Fidelity & Guaranty Co.* v. *Sullivan*, 93 Cal.App.2d 559 [209 P.2d 429]; *Strauss* v. *Strauss*, 90 Cal.App.2d 757 [203 P.2d 857].)''

 Respondent's position is apparently that he was never an officer or agent or employee of Dynacal and that any business dealings were between plaintiff on the one hand and Dynacal on the other.

Appellant's position is that he dealt directly with respondent and that the services, materials and monies advanced were directly and specifically requested by respondent on his behalf at which time he promised to pay for the same. Plaintiff (appellant) makes it perfectly clear that he is not suing respondent as a guarantor, but rather upon the basis that respondent is primarily and directly responsible for the amount sued upon because the services, etc., were rendered directly to him at his request and for his personal benefit.

The case of *Shapiro* v. *Greenberg*, 94 Cal.App. 241 [270 P. 1008], is partially in point. In the *Shapiro* case, there was an appeal from a judgment rendered in favor of the plaintiff on the balance found to be due for and on account of goods, wares, and merchandise furnished the defendant. It was the defendant's position that the goods, etc., were sold to a corporation and that any oral promise of guaranty was violative of the statute of frauds.

The court stated at page 242 as follows:

''The substance of appellant's contention is that the evidence only establishes against him an oral promise of guaranty, and that this promise is nonenforceable because it was not in writing. But even under the controlling statute (Civ. Code, § 2794, subd. (2)) the defendant should be regarded as the original obligor, because the promise was made 'under circumstances such as to render the party making the promise the principal debtor.' ''

Factual issues exist in this cause and the trial court erred in rendering the summary judgment.

The judgment is reversed.

Wood, P. J., and Lillie, J., concurred.