[Civ. No. 13602. Fourth Dist., Div. Two. Jan. 13, 1975.]

RIBTON M. WADE, Plaintiff, Cross-defendant and Appellant, v. DIAMOND A CATTLE COMPANY et al., Defendants, Cross-complainants and Respondents.

COUNSEL

John P. Carroll for Plaintiff, Cross-defendant and Appellant.

Schlecht & McCullough and John C. Shevlin for Defendants, Cross-complainants and Respondents.

OPINION

WHYTE, J.*—Action for money due in three counts involving three separate transactions for the purchase, feeding and fattening, and resale of cattle. Plaintiff is a medical doctor who maintained a ranch in the Coachella area. Defendant, operating as Diamond A Cattle Company, conducted a feed yard on its own account and as agent and factor purchased, fed and fattened, and resold cattle for the account of its principals including plaintiff. Operating under the name of its *alter ego*[1] Coachella Valley Finance Company defendant also financed its customers' purchases up to 75 percent of the purchase price. The amount so financed with interest was deducted from the sales price at the time of resale.

Counts two and three involve transactions covering respectively 147 head of cattle purchased for the account of plaintiff on June 9, 1969, and 145 head of cattle purchased for the account of plaintiff on July 7, 1969. There is no dispute regarding these contracts. Defendant admitted it owed plaintiff $2,664.68 under count two and $6,751.35 under count three.

In count one plaintiff alleged that sometime prior to July 30, 1969, defendant orally agreed to purchase 1,051 head of cattle for plaintiff's account and that on July 30, 1969, a written agreement was entered into for the financing of said purchase as follows: 1,051 head at $27 cwt—total cost $207,772; equity payment by plaintiff $51,943; financed by defendant $155,829. Plaintiff claimed said cattle resold at a net profit to plaintiff of $2,030.15 making a total due plaintiff from the proceeds of such resale of $53,973.15 of which he received an advance of $40,000 on February 20, 1970, leaving a balance due him of $13,973.15.

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

[1]Appellant does not challenge the finding that Coachella Valley Finance Company is the *alter ego* of Diamond A Cattle Company.

By answer and cross-complaint defendant denied the existence of an oral contract but alleged that instead there was a written contract dated June 20, 1969, whereby defendant sold to plaintiff 1,000 head of cattle which it owned at $33 cwt. Subsequently an additional 51 head were orally added to this purchase at the same price. Defendant admits the execution of a financing contract for $155,829.[2] How this figure is reached is not specified in the contract but it is 75 percent of the purchase price computed at $27 cwt. Defendant alleged this amount appeared because of mistake and inadvertence and asked that the document be reformed to show the true purchase price. Defendant asked judgment on the cross-complaint for the amount plaintiff was overpaid based on a sales price of $33 cwt.

The trial court on adequate evidence found that the cattle involved were part of a lot purchased by defendant on its own account in January 1969 for delivery in July and August; that in June when it sold to plaintiff, defendant disclosed its ownership but breached its fiduciary duty by failing to make a full disclosure as to the source of the cattle or the purchase price by which defendant acquired the same.

The court further found that the basic agreement between the parties was a written contract of purchase and sale at $33 cwt, and that the figure of $27 used in computing the financing agreement and certain statements of account was the result of unilateral mistake of defendant known to the plaintiff. The reasonable market value of said cattle at the time of the written contract was found to be $30 cwt. Computed upon the basis of reasonable market value defendant was entitled to a set-off of $8,340.07 on the transaction involved in the first cause of action and the cross-complaint against the amounts admittedly due on the second and third cause of action leaving a balance due plaintiff in the sum of $1,075.96. From the judgment entered in his favor in that amount plaintiff appeals.

No issue is raised regarding the mathematical computations of the trial court. If the trial court was correct in its determination that the cost properly charged against plaintiff was the reasonable market value of the cattle on the date of purchase the judgment must be affirmed.

The plaintiff, however, contends that the only cost properly chargeable to him was the $27 cwt price which defendant paid for the cattle.

---

[2]This is a different document than the one alleged by plaintiff to be the financing agreement although the amount financed is the same in both documents.

First he contends that in determining what the terms of this particular transaction were we must consider four prior and one subsequent dealings between the parties all of which were on uniform terms and in all of which the cattle were charged to plaintiff at defendant's cost. This is but a different version of the oft repeated and useless appeal to an appellate tribunal to reweigh the evidence. The compelling answer to this claim is that the trial court on substantial evidence found that the transaction in this case was different and was based upon an express written agreement.

Next appellant contends that even if the original contract was in writing for $33 cwt it was subsequently modified by the financing agreement based upon a price of $27 cwt.

Modification is a change in the obligation by a modifying agreement which requires mutual assent. (1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 715, p. 600.) The question whether the necessary elements are present is one of fact which like any other question of fact is for determination by the trial judge not the appellate court. (*Kerr Chemicals, Inc.* v. *Crown Cork & Seal Co.* (1971) 21 Cal.App.3d 1010, 1013 [99 Cal.Rptr. 162]; see also *Mayo* v. *Pacific Project Consultants, Inc.* (1969) 1 Cal.App.3d 1013, 1020 [82 Cal.Rptr. 117].)

Although characterized as a modification what appellant is basically contending for is a novation. But in order for there to be a valid novation, it is necessary that the parties intend that the rights and obligations of the new contract be substituted for the terms and conditions of the old contract. Unless this is the intent of the parties, the new contract does not constitute a novation of the old contract. (*Ayoob* v. *Ayoob* (1946) 74 Cal.App.2d 236, 250-251 [168 P.2d 462]; *Blumer* v. *Madden* (1932) 128 Cal.App. 22, 24 [16 P.2d 319].)

The trial court found against any intent to substitute the new for the old or to modify the terms of the old when it found the new statement described the transaction as involving a 27¢ per pound price "through inadvertence and mistake." While the evidence on this issue is highly conflicting there is substantial evidence to support this finding.

Appellant contends, the trial court found, and on appeal respondent concedes, that defendant occupied a fiduciary relationship to plaintiff and that its fiduciary duty was breached. The question then becomes what is the proper measure of damages for such breach.

■ If an agent conceals his interest in property sold or buys property for his principal at a price less than he charges his principal, he must disgorge the secret profit even if the property is worth the larger amount and the principal was willing to pay it. (*Thompson* v. *Stoakes* (1941) 46 Cal.App.2d 285, 289-290 [115 P.2d 830]; Rest. 2d Agency, § 388; see *Haurat* v. *Superior Court* (1966) 241 Cal.App.2d 330, 334 [50 Cal.Rptr. 520]; 1 Witkin, Summary of Cal. Law (8th ed. 1973) Agency, § 90, p. 708.) ■ But this case differs in two particulars: first, the agent disclosed his ownership; second, the agent originally purchased for his own account not that of his principal. The decision to sell to plaintiff was made only after defendant itself had owned the cattle for several months.

Because of these factors the trial court looked to the law of trusts for an answer. The obligations of an agent are the same as those imposed upon a trustee. (Civ. Code, § 2322, subd. 3; *Haurat* v. *Superior Court, supra,* 241 Cal.App.2d 330, 334.)

Restatement Second of Trusts, section 206, sets forth the liability of a trustee for breach of loyalty. "If the trustee did not acquire the property for the purpose of reselling it to himself as trustee but does sell it to himself as trustee, he is chargeable with the excess, if any, of the amount which he received from the trust over the value of the property at the time when he sold it to himself as trustee." (Com. g.)

This is the rule the trial court applied, and we think rightly, to this case. What the agent is by law required to relinquish to the principal are the benefits and advantages acquired by the agent as an outgrowth of his agency. (*Crogan* v. *Metz* (1956) 47 Cal.2d 398, 404 [303 P.2d 1029].) As to the cattle involved in count one the agency began when plaintiff and defendant commenced negotiations for the purchase of these cattle by plaintiff. The appreciation in value of the cattle between the time they were acquired by defendant in good faith for its own account and its determination to sell them to plaintiff was not an outgrowth of the agency. The breach of fiduciary duty occurred only at the time of sale. Defendant was required to disgorge the profit resulting from such breach of duty to-wit the difference between the market value and the sales price. There was substantial evidence to support the trial court's finding of reasonable market value. The case is similar to *Store of Happiness* v. *Carmona & Allen* (1957) 152 Cal.App.2d 266 [312 P.2d 1104] where the agent was allowed to retain regular commissions paid to it for placing the principal's advertising with a television station, receipt of which commissions was known to principal but was required to pay over to principal

additional frequency discounts allowed by the station because of the extent and repetitive nature of principal's advertising but received by agent without the principal's knowledge and consent.

As the trial court found on substantial evidence there was a written contract of sale and no novation of a new agreement for this original contract and as the trial court applied the proper measure of damages to the breach of fiduciary duty resulting from the making of this original contract it is not necessary to go into the question of reformation of the financing agreement or any of the other points raised by appellant.

The judgment is affirmed.

Tamura, Acting P. J., and Kaufman, J., concurred.

A petition for a rehearing was denied February 3, 1975, and appellant's petition for a hearing by the Supreme Court was denied March 12, 1975.