Filed 3/28/13 Zarate v. Bruker Nano CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| JOHN ZARATE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BRUKER NANO, INC.,<br><br>    Defendant and Appellant. | 2d Civil No. B241217<br>(Super. Ct. No. 1384661)<br>(Santa Barbara County) |

Appellant Bruker Nano, Inc. (Bruker) purchased all of the stock of Veeco Metrology (Veeco) and retained all of Veeco's employees, including respondent John Zarate. When hired by Veeco, Zarate signed an employee confidentiality agreement containing an arbitration provision. Zarate later signed a similar confidentiality agreement with Bruker, but it did not provide for arbitration. A dispute arose between Zarate and Bruker, resulting in Zarate's termination. Zarate sued, inter alia, for wrongful termination and Bruker moved to compel arbitration. The trial court determined the second agreement superseded the first and, consequently, there was no agreement to arbitrate. We affirm.

FACTS AND PROCEDURAL BACKGROUND

In 2008, Zarate was hired by Veeco, a California based manufacturer of high resolution microscopes. Zarate executed a three-page employee confidentiality and inventions agreement (Veeco Agreement) that contains an arbitration provision requiring

him to submit "any claim or controversy arising out of [his] employment or the cessation thereof . . . [to] binding arbitration." The document states that the terms of the agreement apply as a condition of his employment or continued employment with Veeco, "its subsidiaries, affiliates, successors or assigns."

Two years later, Bruker, a Massachusetts based microscope manufacturer, purchased 100% of Veeco's stock, and all of Veeco's existing employees, including Zarate, began working for Bruker. During an orientation meeting, a Bruker representative informed Zarate and the other Veeco employees that they would have to sign several employment-related documents, including an employee patent and confidentiality agreement (Bruker Agreement). The three-page Bruker Agreement addresses virtually the same subject matter as the Veeco Agreement, but does not contain an arbitration provision.

After Bruker terminated Zarate's employment, Zarate brought this action for wrongful termination in violation of public policy and waiting time penalties. Zarate contends Bruker terminated him because he refused to engage in "illegal" marketing activities. When Zarate refused to submit his claims to arbitration, Bruker petitioned to compel arbitration based on the arbitration provision in the Veeco Agreement. Bruker asserted that the Bruker Agreement did not supersede the Veeco Agreement and that both agreements, including the Veeco arbitration provision, are fully enforceable.

The trial court denied the petition, concluding Zarate never consented to have his claims against Bruker submitted to arbitration. The court acknowledged that the Bruker Agreement does not contain an integration clause or state that it supersedes all prior agreements, but determined "it is apparent on reading the [Bruker] agreement that it was intended to replace the Veeco document." The court noted that both agreements concern the same subject matter, i.e., confidentiality and inventions, were presented to Zarate as a condition of employment and include "a number of inconsistent provisions that would be very difficult to enforce if both agreements were in effect." The two agreements have dissimilar disclosure and assignment provisions and define confidential information very differently, causing the court to remark: "It makes no sense for

2

[Bruker] to have presented [Zarate] with its own inventions and confidentiality agreement if it did not intend to replace the prior agreement, which, while containing similar provisions, was also very different in its terms." Having decided that the Veeco Agreement was superseded by the later agreement, the court did not reach Zarate's contention that the Veeco arbitration provision is unconscionable and unenforceable. Bruker appeals.

## DISCUSSION

### Standard of Review

This appeal turns on whether the Bruker Agreement was a novation or modification of the Veeco Agreement. Although the trial court referred to the Bruker Agreement as a substituted agreement, rather than a novation, Zarate concedes the concept of novation is the appropriate "legal framework for review." As discussed below, a novation is a "substituted contract" that completely extinguishes the original obligation. (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 961, p. 1052; see *Wells Fargo Bank v. Bank of America* (1995) 32 Cal.App.4th 424, 431 (*Wells Fargo*).) Where there is conflicting evidence, the question of whether the parties entered into a novation or modification is a question of fact. (*Wade v. Diamond A Cattle Co*. (1975) 44 Cal.App.3d 453, 457.) Where, as here, the issue turns upon the meaning of a written instrument and no conflicting extrinsic evidence exists, then the question is one of law subject to de novo review. (*Howard v. County of Amador* (1990) 220 Cal.App.3d 962, 980 (*Howard*).)

### The Bruker Agreement Superseded the Veeco
### Agreement through Novation

A novation is the "substitution of a new obligation for an existing one" with the intent to extinguish the latter. (Civ. Code, § 1530;[1] *Meadows v. Lee* (1985) 175 Cal.App.3d 475, 482, fn. 1.) Under principles of novation, a new contract may be substituted for an old contract by creating a new obligation between the same parties or

---

[1] All statutory references are to the Civil Code.

3

with a new party. (§§ 1531, 1532.) Thus, a novation is a "new contract which supplants the original agreement and 'completely *extinguishes* the original obligation . . . .'" (*Wells Fargo, supra,* 32 Cal.App.4th at p. 431.) In contrast, a modification does not terminate the preexisting contract. (*Davies Machinery Co. v. Pine Mountain Club, Inc.* (1974) 39 Cal.App.3d 18, 25.) A subsequent agreement that expressly recognizes and affirms the continuing existence and validity of the original agreement is a modification rather than a novation. (*Howard, supra,* 220 Cal.App.3d at pp. 977-978.)

The question of whether a novation has occurred is always one of intent. (*Howard, supra,* 220 Cal.App.3d at pp. 977-978; *Wells Fargo, supra*, 32 Cal.App.4th at p. 432.) It must "'clearly appear' that the parties intended to extinguish rather than merely modify the original agreement." (*Howard,* at p. 977.) Intent need not be express, however, it may be inferred from the circumstances and the conduct of the parties. (14A Cal.Jur.3d (2008) Contracts, § 293, p. 175; see *Alexander v. Angel* (1951) 37 Cal.2d 856, 860.) The parties do not have to state that the original contract was rescinded, so long as the intent to abandon can be ascertained from the acts and conduct of the parties. (*Hunt v. Smyth* (1972) 25 Cal.App.3d 807, 818.)

Bruker contends the uncontroverted evidence fails to clearly establish the parties intended to substitute the Veeco Agreement for the Bruker Agreement. We disagree. Bruker could have held Zarate to the terms of the Veeco Agreement. Instead, it required Zarate to sign a new agreement addressing the same confidentiality and inventions issues, but containing very different terms. A court may infer novation when a new agreement is so inconsistent with the earlier agreement that the two cannot subsist together. (*Producers Fruit Co. v. Goddard* (1925) 75 Cal.App. 737, 754-755; see 14A Cal.Jur.3d, *supra,* at § 293, pp. 175-176, fns. omitted ["Whether the new contract was intended as a substitute for the old may be inferred where the terms of the new contract differ widely from those of the old, especially where the two are entirely inconsistent and cannot be operative at the same time"].) Such is the case here.

It is undisputed that after the stock purchase, all Veeco employees, including Zarate, became full-fledged Bruker employees. As a condition of employment,

4

Bruker required Zarate to sign numerous employment documents which, in large part, duplicated the Veeco employment documents. The Bruker and Veeco Agreements have similar titles and address virtually all the same issues, but are inconsistent in many respects. The Veeco Agreement is governed by California law; the Bruker Agreement is subject to Massachusetts law. The Veeco Agreement prohibits employees from disclosing confidential or proprietary information during the period of employment and for five years after, while the Bruker Agreement prohibits the disclosure of such information at any time "during, or subsequent to, the Employee's employment." The Veeco Agreement requires the employee to assign to the company each invention, discovery, or idea made or conceived during the period of employment, that relates directly or indirectly to Veeco's business. In contrast, the Bruker Agreement requires the assignment of inventions during the period of employment or within three months after termination of employment. The two agreements also define "confidential information" very differently. As a result, an employee could fully comply with one agreement while breaching the other.

Notably, the Bruker Agreement required Zarate to "represent[] that he/she has no agreements with, or obligations to, others in conflict with the foregoing [terms]." Given the conflicting terms in the two confidentiality agreements, Zarate could not make this representation if the parties had intended for the earlier agreement to remain in effect. That Bruker compelled its employees to represent that they had no conflicting obligations is clear evidence that Bruker intended to supersede the Veeco Agreement through novation. As the trial court observed, "[i]t makes no sense for [Bruker] to have presented [Zarate] with its own inventions and confidentiality agreement if it did not intend to replace the prior agreement . . . ."

## CONCLUSION

As a novation, the Bruker Agreement completely extinguished the Veeco Agreement, including the arbitration provision. (See *Wells Fargo, supra,* 32 Cal.App.4th at p. 431.) Had Bruker wished an arbitration provision, it should have included one in the successor agreement.

5

Without an agreement to arbitrate, Zarate cannot be compelled to submit the parties' dispute to arbitration. (*Cione v. Foresters Equity Services, Inc.* (1997) 58 Cal.App.4th 625, 634 ["'The right to arbitration depends upon contract; a petition to compel arbitration is simply a suit in equity seeking specific performance of that contract. [Citations.]  There is no public policy favoring arbitration of disputes which the parties have not agreed to arbitrate.  [Citation.]'  [Citation.]"].)  Thus, the trial court properly denied Bruker's petition to compel arbitration.

Because we concur with the trial court's decision, we need not reach Zarate's contention that the Veeco arbitration provision is procedurally and substantively unconscionable.

The order of the trial court is affirmed.  Zarate shall recover his costs on appeal.

NOT TO BE PUBLISHED.


PERREN, J.

We concur:


GILBERT, P. J.


YEGAN, J.


6

Colleen K. Sterne, Judge

Superior Court County of Santa Barbara

_____

Nixon Peabody, Bonnie Glatzer, Ellen M. Papadakis and Tzaddi S. Thompson for Defendant and Appellant.

Law Offices of Lauren John Udden, Lauren John Udden; Law Office of Herb Fox and Herb Fox for Plaintiff and Respondent.